**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DISTRICT)**

| | |
|---|---|
| HAGERSTOWN RECOVERY LLC <br> DBA THE VALLEY <br> 19120 MUNCASTER RD. <br> DERWOOD, MD 20855 <br><br> *Plaintiff,* <br><br> v. <br><br> NEW SPIRIT RECOVERY LLC <br> C/O ARTHUR KAZANCHIAN <br> 17856 CATHEDRAL PL <br> ENCINO, CA 91316 <br><br> *Defendant,.* | Case No.: <br> Jury Trial Demanded |

**COMPLAINT AND JURY DEMAND**

TO THE HONORABLE JUDGES OF SAID COURT:

COMES NOW, the Plaintiff, Hagerstown Recovery LLC DBA The Valley (hereinafter, "The Valley"), by and through undersigned counsel, Benajamin Kurtz, and the law firm of Kurtz, Peters and Associates LLC., hereby files suit for damages against the Defendant, New Spirit Recovery LLC (hereinafter, "New Spirit"), and in support of this claim Plaintiff avers the following:

**THE PARTIES**

1. Plaintiff, The Valley is a Maryland Limited Liability Company, whose members are citizens of the states of Maryland and Florida.

2. At all times herein pertinent, New Spirit is a California Limited Liability Company whose members are California citizens.

1

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over Valley's related state and common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

4. This Court has personal jurisdiction over New Spirit because (a) New Spirit has marketed, distributed, offered to treat, and/or used the infringing trademark, to persons within the State of Maryland; (b) New Spirit services Maryland residents in their treatment facilities and lures them out of the State of Maryland through use of the infringing trademark.

5. The District of Maryland is a proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to The Valley's claims occurred in this District.

6. The Plaintiff offers additional causes of action arising out of State of Maryland statutes and common law, including violations of Maryland common law.

7. Under 28 U.S.C. § 1367, the United States District Court has supplemental jurisdiction over all claims that are so related to claims in an action for which there is original jurisdiction that together they form part of the same case or controversy under Article III of the United States Constitution.

8. The Valley's, State of Maryland statutory and common law claims are so related to its claims for which the United States District Court has original jurisdiction that together they form part of the same case and controversy.

9. Under 28 U.S.C. § 1391(b)(1), and (2), venue is appropriate in the United States District Court, Southern Division because Montgomery County is it is the judicial district in which the events or omissions giving rise to this action occurred.

**FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS AND COUNTS**

10. On April 1, 2021, Hagerstown Recovery LLC opened its business under the tradename The Valley. The Valley is a residential treatment center that is licensed by the State of Maryland to treat patients, in a residential setting, who suffer from drug and alcohol abuse. The Valley is located in Derwood, Maryland.

11. When the Valley opened it had twelve (12) beds, on a 3-acre campus, on which it could treat patients for up to forty-five (45) days at a time.

12. Over time The Valley grew to a forty-eight (48) bed facility that sits on sixteen (16) acres.

13. Hagerstown Recovery LLC DBA The Valley registered its tradename with the State of Maryland, prior to opening its doors, on August 7, 2020. **(See Exhibit A)**

14. From the time of opening to today's date Hagerstown Recovery LLC has continuously used the name The Valley and has built up significant goodwill in the area of drug and alcohol treatment under the name The Valley.

15. The name Hagerstown Recovery LLC has never been used outwardly to the public in marketing the treatment facility in question or on the facility's website. The facility has always been known, publicly, as The Valley from inception.

16. Hagerstown Recovery LLC also applied, in January of 2023, with the United States Patent and Trademark Office ("PTO") for two trademarks. One was for a symbol/logo that is not the subject of this lawsuit but which a trademark was granted under

registration number 7,304,172. The other trademark was for the words *The Valley* and that trademark was granted under registration number 7,411,509**. (See Exhibit B)**

17. The trademark prohibits any other company from using the words The Valley in: *CLASS 44: Addiction treatment services; Rehabilitation of drug addicted patients; Rehabilitation patient care services which includes inpatient and outpatient care; Rehabilitation for substance abuse patients.*

18. The Valley has spent significant financial resources in promoting both its trademarked logo and the trademarked name, The Valley, on Google, Facebook, its own website, charitable events and written marketing materials.

19. Again, after the trademark was issued, Hagerstown Recovery LLC has built up significant goodwill in the substance abuse community under the name The Valley. People suffering from substance abuse addiction actively seek out The Valley in order to find treatment for their ailments. One of the reasons potential patients seek The Valley over other treatment options is due to the quality of care The Valley offers which is associated with its trademark.

20. The main way customers who are looking for The Valley find The Valley, is through Google search and paid Google advertisements that The Valley posts using its trademark.

21. The Valley accepts many forms of payment for its services but primarily health insurance will cover the costs of patients stay at The Valley.

22. The Valley specializes in treating both indigent clients through Medicaid and wealthier clients through cash pay or private health insurance plans.

23. Under Google terms and conditions any addiction treatment facility wanting to use Google paid advertisements must first get their business certified through a 'Legit Script' certification.

24. The 'LegitScript' certification is a time consuming, lengthy, expensive, process, that ensures a treatment facility is a reputable operation.

25. The Valley does have a 'LegitScript' certification and is authorized through both Google and Facebook to advertise its website directly to potential consumers of its services.

26. The Valley bids on keywords related to addiction treatment through Google which is only allowed because The Valley is 'LegitScript' certified. Those ads then lead a patient to The Valley's website www.thevalleymd.com .

27. The Valley also bids on its own, Trademarked name, The Valley, in Google AdWords, so that when people search just The Valley, The Valley's paid Google advertisement will also come up.

28. In the treatment industry it is common for people seeking residential addiction treatment to travel far from their homes to seek treatment.

29. The defendant, New Spirit, is also a residential treatment center that treats patients for drug and alcohol addiction.

30. New Spirit is licensed to treat such patients by the State of California and is located in Los Angeles, California.

31. New Spirit treats patients that have private health insurance only and they seek reimbursement of up to $5000.00 a day for their services.

32. Montgomery County, Maryland is an extremely affluent area with a high percentage of private insurance policies that would pay enormous prices to New Spirit. As such New Spirit has a financial incentive to target patients in the Montgomery County area.

33. New Spirit's website is not 'LegitScript' certified so they can not engage in Google paid advertisements that lead directly back to their own website.

34. Since New Spirit is not 'LegitScript' certified they also cannot bid on keywords that are directly related to addiction treatment.

35. In order to get around not being 'LegitScript' certified but still being able to advertise on Google, New Spirit set up a separate landing page called treatmentpages.com,

36. Again, treatmentpages.com is not 'LegitScript' certified but because treatmentpages.com does not directly advertise a treatment center it can advertise on Google as long it is not using keywords directly related to treatment.

37. In order to advertise on Google, New Spirit, through its website, treatmentpages.com uses keywords directly naming other treatment centers in their advertisements. So, for instance when someone searches for The Valley on Google, who is looking for The Valley, an ad for treamentpages.com will come up pretending to be The Valley.

38. When a perspective patient of The Valley calls treamentpages.com, after seeing The Valley prominently displayed in treatmentpages.com ads, they are then pressured to attend New Spirit in California instead of The Valley.

39. On March 28, 2025, members of The Valley were testing their Google advertisement by searching for terms like *The Valley* and *The Valley rehab,* in Google search. During that search, an advertisement came up on the top of the page that said, "The Valley MD, the

#1 Rated in Maryland but instead of leading to The Valley's website it led to treamentpages.com. (**See Exhibit C**)

40. That Google advertisement itself had the words The Valley MD, prominently displayed on the advertisement and was purposely using The Valley's trademark to trick perspective patients into clicking on the link for treatment. This was done with the intention of misleading patients who were specifically looking for The Valley into attending New Spirit.

41. The only way that advertisement would come up, using the search terms, The Valley was if the person setting up the advertisement asked Google to bid on keywords related to The Valley.

42. Not only was treamentpages.com using the name The Valley directly in the paid keywords on Google, treatmentpages.com was using the actual trademark The Valley in the actual advertisement the public saw. Again, this was clearly done to misdirect patients looking for The Valley specifically and not treatment centers in general.

43. These Google paid advertisements were run in Maryland seeking to divert Maryland patients to a treatment center in California by using goodwill the Valley has built up over time. This was specifically done in order to target affluent patients who could either pay cash to New Spirit or who had high paying insurance policies.

44. The Valley has spent considerable time and resources to promote its trademarked name to the general public through extensive marketing campaigns on the internet, electronic billboards and in print.

45. On March 28, 2025, an agent of The Valley called the phone number listed at treamentpages.com and spoke with an intake officer of prospective patients of New

Spirit. At first the intake officer would not divulge which treatment center they worked for. The intake officer just said they worked for multiple treatment centers and needed to do an intake assessment first.

46. At that point the agent of The Valley provided the intake officer with his actual insurance card, which happened to be a very high paying insurance policy and told the intake officer he had a drinking problem. The intake officer then told The Valley's agent that he was in Maryland.

47. Once New Sprit's intake officer, verified The Valleys' agent's insurance was a high paying policy, the intake officer admitted that he worked for New Spirit and was recommending that the person go to New Spirit in California for treatment.

48. The Valley's agent protested and clearly stated that he lived in Maryland and wanted to go to a Maryland facility.

49. At this point the New Spirit intake officer clearly stated that all that was available in Maryland was government run facilities and because The Valley's agent had good private insurance, he would be much better off going to a high-end facility like New Spirit.

50. At this point The Valley's agent asked the New Spirit intake officer to call him back so he could think about.

51. Later that evening the intake officer for New Spirit called The Valley's agent back and began pressuring him to go to treatment at New Spirt. The Valley's agent repeated multiple times that he wanted a place closer to home and New Spirt intake officer kept saying going to California would be best.

52. The Valley's agent ended the call and he thought that would be the last he heard from New Spirit.

53. Over the course of the next two weeks New Spirit called and texted the Valley's agent on multiple occasions and tried to talk him into going to New Spirit. Every time the Valley's agent protested and said he wanted something closer to home the New Spirit intake officer insisted all that he had available was a bed at New Spirit in California.

54. On April 2 and 3, 2025 representatives from New Spirit texted, who they thought was The Valley's agent's father, and told them he was struggling with dependency and needed their help.

55. On April 10, 2025, a different representative of treamentpages.com called The Valley's agent and explicitly admitted they worked for New Spirit and followed that call up with a text saying they recommend New Spirit.

56. On April 16, 2025, again a representative of New Spirit called The Valley's agent, and that representative followed the call up with a text trying to get The Valley's agent into treatment at New Spirit.

57. All of the contact with New Spirit started when the agent for The Valley responded to the advertisement designated in Exhibit C.

58. The Plaintiff's damages, and losses were solely and proximately caused by the Defendants, their agents, and their employees.

59. New Spirit profited significantly from the illegal use of The Valley's trademark.

## COUNT I.- FEDERAL TRADEMARK INFRINGEMENT

60. Plaintiff incorporates by reference the preceding paragraphs as if set forth fully herein, and states further.

61. New Spirit's use of a near identical phrase The Valley, which is trademarked, is likely and was intended to cause confusion, deception, and mistake by creating the false and misleading impression that New Spirit, through treatmentpages.com is actually The Valley treatment center.

9

62. New Spirit's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with The Valley.

63. New Spirit caused and is likely to continue causing substantial injury to the public and to The Valley, and The Valley is entitled to recover New Spirit's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT II. -FEDERAL UNFAIR COMPETITION

64. Plaintiff incorporates by reference the preceding paragraphs as if set forth fully herein, and states further.

65. New Spirit's use of a near identical trademarked phrase The Valley, has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that New Spirit' treatment center is affiliated, connected, or associated with The Valley, or have the sponsorship, endorsement, or approval of The Valley, or furthermore may actually be The Valley.

66. New Spirit has made false representations, false descriptions, and false designations of, on, or in connection with its services in violation of 15 U.S.C. § 1125(a). New Spirit's activities have continued to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to The Valley's goodwill.

67. New Spirits' conduct has caused, and is likely to continue causing, substantial injury to the public and to the Valley. The Valley is entitled to recover New Spirit's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT III. COMMON LAW TRADEMARK AND UNFAIR COMPETITION

68. Plaintiff incorporates by reference the preceding paragraphs as if set forth fully herein, and states further.

69. On information and belief, New Spirit acted with full knowledge of The Valley's use of, and statutory and common law rights to, The Valley's Mark and without regard to the likelihood of confusion of the public created by New Spirit's activities.

70. New Spirit's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with The Valley's Mark to the great and irreparable injury of The Valley

71. As a result of New Spirit's acts, The Valley has been damaged in an amount not yet determined or ascertainable. At a minimum, however, The Valley is entitled to an accounting of New Spirit's profits, damage, and costs. Further, in light of the deliberate and malicious use of a confusingly similar imitation of The Valley's Mark, and the need to deter New Spirit from engaging in similar conduct in the future, The Valley

## COUNT IV.  MARYLAND COMMON LAW TRADEMARK INFRINGEMENT

72. Plaintiff incorporates by reference the preceding paragraphs as if set forth fully herein, and states further.

73. The Valley has been using the mark, The Valley, in addiction treatment commerce since they open their doors in 2021.

74. On information and belief, New Spirit acted with full knowledge of The Valley's use of, statutory and common law rights to, The Valley's Mark and without regard to the likelihood of confusion of the public created by New Spirit's activities.

75. New Spirit purposely, intentional, willfully, and with malicious intent, used this mark to advertise its own addiction treatment center within the borders of Maryland.

76. As a result of New Spirit's acts, The Valley has been damaged in an amount not yet determined or ascertainable. At a minimum, however, The Valley is entitled to an accounting of New Spirit's profits, damage, and costs. Further, in light of the deliberate and malicious use of a confusingly similar imitation of The Valley's Mark, and the need to deter New Spirit from engaging in similar conduct in the future, The Valley additionally is entitled to punitive damages.

WHEREFORE, for the foregoing reasons,

1. New Spirit be compelled to account to The Valley for any and all profits derived by New Spirit from the use of the infringing Mark by accounting for all patients that have attended their program from the State of Maryland and immediate surrounding area (DMV), to be determined by a jury;

2. The Valley be awarded all damages caused by the acts forming the basis of this Complaint to be determined by a jury;

3. Based on New Spirit's knowing and intentional use of an exact iteration of The Valley Mark, the damages awarded be trebled and the award of New Spirit's profits be enhanced as provided for by 15 U.S.C. § 1117(a);

4. New Spirit be required to pay to The Valley the costs and reasonable attorneys' fees incurred by The Valley in this action pursuant to 15 U.S.C. § 1117(a);

5. Based on New Spirit's willful and deliberate infringement and/or dilution of The Valley Mark, and to deter such conduct in the future, The Valley be awarded punitive damages;

6. The Valley be awarded prejudgment and post-judgment interest on all monetary awards; and

7. The Valley be granted such other and further relief as the Court may deem just.

Date: 4/16/2025

Respectfully submitted,
KURTZ, PETERS & ASSOCIATES LLC.

By: */s/ Benjamin M. Kurtz*_____
Benjamin M. Kurtz, Esquire
Maryland Federal Bar No. 20602
350 Camino Gardens Blvd., Suite 300
Boca Raton, Florida 33432
Ph: 301-685-3911 Fx: 301-685-3674
bkurtz@kurtzandpeters.com

## JURY TRIAL DEMAND

Plaintiff, by and through undersigned counsel, respectfully demands a jury trial on all issues and causes of action contained herein.

*/s/ Benjamin M. Kurtz*_____
Benjamin M. Kurtz, Esquire