**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DISTRICT)**

|  |  |  |
|---|---|---|
| | * | |
| HAGERSTOWN RECOVERY LLC | * | |
| DBA THE VALLEY | * | |
| 19120 MUNCASTER RD. | * | |
| DERWOOD, MD 20855 | * | |
| | * | |
| *Plaintiff,* | * | |
| | * | |
| v. | * | |
| | * | ~~Case No.:~~ |
| | * | ~~Jury Trial Demanded~~ |
| NEW SPIRIT RECOVERY LLC | * | |
| C/O ARTHUR KAZANCHIAN | * | |
| 17856 CATHEDRAL PL | * | |
| ENCINO, CA 91316 | * | |
| | * | |
| & | * | |
| | * | Case No.: 8:25-cv-01252-DKC |
| TREATMENT OUTREACH | * | Jury Trial Demanded |
| SERVICES INC | * | |
| C/O JESSICA PHELAN | * | |
| 1163 FERNLEA DR | * | |
| WEST PALM BEACH, FL 33417 | * | |
| | * | |
| & | * | |
| | * | |
| JESSICA PHELAN-Personally | * | |
| 1163 FERNLEA DR | * | |
| WEST PALM BEACH, FL 33417 | * | |
| | * | |
| & | * | |
| | * | |
| POLARIS DETOX LLC DBA | * | |
| INNOVO DETOX | * | |
| 7007 YORK RD. | * | |
| ABBOTTSTOWN, PA 17301 | * | |
| | * | |
| ~~*Defendant,*~~ *Defendants,* | * | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**AMENDED COMPLAINT AND JURY DEMAND**

TO THE HONORABLE JUDGES OF SAID COURT:

COMES NOW, the Plaintiff, Hagerstown Recovery LLC DBA The Valley (hereinafter,

"The Valley"), by and through undersigned counsel, Benajamin Kurtz, and the law firm of Kurtz, Peters and Associates LLC., hereby files suit for damages against the Defendant, New Spirit Recovery LLC (hereinafter, "New Spirit"), Treatment Outreach Services Inc. (hereinafter "Treatment Out") Jessica Phelan (hereinafter "Phelan") and Polaris Detox LLC DBA Innovo Detox LLC (hereinafter " Innovo") and in support of this claim Plaintiff avers the following:

## THE PARTIES

1.    Plaintiff, The Valley is a Maryland Limited Liability Company, whose members are citizens of the states of Maryland and Florida.

2.    At all times herein pertinent, New Spirit is a California Limited Liability Company whose members are California citizens.

3.    At all times herein pertinent, Treatment Out is a corporation organized under Florida Law.

4.    At all times herein pertinent, Phelan is a citizen of the State of Florida.

~~2.~~5.    At all times herein pertinent, Innovo is a Pennsylvania Limited Liability Company whose members are citizens of the states of Maryland and Florida.

## JURISDICTION AND VENUE

~~3.~~6.    This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over Valley's related state and common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

7.    This Court has personal jurisdiction over all Defendants ~~New Spirit~~ because (a) All Defendants ~~New Spirit has~~ marketed, distributed, offered to treat, and/or used the infringing trademark, to persons within the State of Maryland; (b) New Spirit and Innovo

2

services Maryland residents in their treatment facilities and lures them out of the State of Maryland through use of the infringing trademark.

4.8.    This Court has personal jurisdiction over Defendant Phelan because Phelan has purposefully directed her conduct at this forum with respect to the trademark violations, Lanham Act violations, and state tort claims. The exercise of jurisdiction over Phelan is reasonable at least because Phelan is an officer, director and co-owner of Defendant Treatment Out.

5.9.    The District of Maryland is a proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to The Valley's claims occurred in this District.

6.10.    The Plaintiff offers additional causes of action arising out of State of Maryland statutes and common law, including violations of Maryland common law.

7.11.    Under 28 U.S.C. § 1367, the United States District Court has supplemental jurisdiction over all claims that are so related to claims in an action for which there is original jurisdiction that together they form part of the same case or controversy under Article III of the United States Constitution.

8.12.    The Valley's, State of Maryland statutory and common law claims are so related to its claims for which the United States District Court has original jurisdiction that together they form part of the same case and controversy.

9.13.    Under 28 U.S.C. § 1391(b)(1), and (2), venue is appropriate in the United States District Court, Southern Division, because Montgomery County is it is the judicial district in which the events or omissions giving rise to this action occurred.

### FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS AND COUNTS

10.14.  On April 1, 2021, Hagerstown Recovery LLC opened its business under the tradename The Valley. The Valley is a residential treatment center that is licensed by the State of Maryland to treat patients, in a residential setting, who suffer from drug and alcohol abuse. The Valley is located in Derwood, Maryland.

11.15.  When the Valley opened it had twelve (12) beds, on a 3-acre campus, on which it could treat patients for up to forty-five (45) days at a time.

12.16.  Over time The Valley grew to a forty-eight (48) bed facility that sits on sixteen (16) acres.

13.17.  Hagerstown Recovery LLC DBA The Valley registered its tradename with the State of Maryland, prior to opening its doors, on August 7, 2020. **(See Exhibit A)**

14.18.  From the time of opening to today's date Hagerstown Recovery LLC has continuously used the name The Valley and has built up significant goodwill in the area of drug and alcohol treatment under the name The Valley.

15.19.  The name Hagerstown Recovery LLC has never been used outwardly to the public in marketing the treatment facility in question or on the facility's website. The facility has always been known, publicly, as The Valley from inception.

16.20.  Hagerstown Recovery LLC also applied, in January of 2023, with the United States Patent and Trademark Office ("PTO") for two trademarks. One was for a symbol/logo that is not the subject of this lawsuit but which a trademark was granted under

registration number 7,304,172. The other trademark was for the words *The Valley* and that trademark was granted under registration number 7,411,509. **(See Exhibit B)**

17.21.  The trademark prohibits any other company from using the words The Valley in: *CLASS 44: Addiction treatment services; Rehabilitation of drug addicted patients; Rehabilitation patient care services which includes inpatient and outpatient care; Rehabilitation for substance abuse patients.*

18.22.  The Valley has spent significant financial resources in promoting both its trademarked logo and the trademarked name, The Valley, on Google, Facebook, its own website, charitable events and written marketing materials.

19.23.  Again, after the trademark was issued, Hagerstown Recovery LLC has built up significant goodwill in the substance abuse community under the name The Valley. People suffering from substance abuse addiction actively seek out The Valley in order to find treatment for their ailments. One of the reasons potential patients seek The Valley over other treatment options is due to the quality of care The Valley offers which is associated with its trademark.

20.24.  The main way customers who are looking for The Valley find The Valley, is through Google search, and paid Google advertisements, Facebook advertisements and printed marketing materials that The Valley posts using its trademark.

21.25.  The Valley accepts many forms of payment for its services but primarily health insurance will cover the costs of patients stay at The Valley.

22.26.  The Valley specializes in treating both indigent clients through Medicaid and wealthier clients through cash pay or private health insurance plans.

23.27.  Under Google terms and conditions any addiction treatment facility wanting to use Google paid advertisements must first get their business certified through a LegitScript certification.

24.28.  The LegitScript certification is a time consuming, lengthy, expensive ,process, that ensures a treatment facility is a reputable operation.

25.29.  The Valley does have a LegitScript certification and is authorized through both Google and Facebook to advertise its website directly to potential consumers of its services.

26.30.  The Valley bids on keywords related to addiction treatment through Google which is only allowed because The Valley is LegitScript certified. Those ads then lead a patient to The Valley's website www.thevalleymd.com .

27.31.  The Valley also bids on its own, Trademarked name, The Valley, in Google AdWords, so that when people search just The Valley or The Valley MD, The Valley's paid Google advertisement will also come up.

28.32.  In the treatment industry it is common for people seeking residential addiction treatment to travel far from their homes to seek treatment.

29.33.  The defendants, New Spirit and Innovo, are is also a residential treatment centers that treatstreat patients for drug and alcohol addiction.

34.     New Spirit is licensed to treat such patients by the State of California and is located in Los Angeles, California.

30.35.  Innovo is licensed to treat such patients by the State of Pennsylvania and is located in York County, Pennsylvania.

31.36.  New Spirit and Innovo treats patients that have private health insurance only and theyand seek reimbursement of up to $5000.00 a day for their services.

37.    Montgomery County, Maryland and the Washington D. C area in general is an extremely affluent areaare extremely affluent areas with a high percentage of private insurance policies that would pay enormous prices to New Spirit and Innovo. As suchsuch, New Spirit and Innovo haves a financial incentive to target patients in the MontgomeryMontgomery County and the Washington D.C area.

38.    That incentive is so high that all four Defendants decided to violate the Valley's trademark to lure patients to their facilities while trading on The Valley's goodwill.

39.    In 2024, Treatment Out, which is wholly owned by Phelan, and is an agent under the control of New Spirit and Innovo, set up a website treatmentpages.com which is not LegitScript certified, and she uses that website to market to recovering addicts, on behalf of New Spirit and Innovo. **(See Exhibit E)**

40.    In 2024, Phelan, who is an agent under the control of New Spirit and Innovo set up another website, treatmentadvisors.info, treatmentadvisors.info is not LegitScript certified, and she uses that website to market to recovering addicts, on behalf of New Spirit and Innovo. **(See Exhibit E)**

32.41.  Treatmentpages.com and treatmentadvisors.info lead to a landing page, after clicking on the ads, that is not advertising any treatment center specifically, this is being done to hide who exactly owns the websites and who is violating The Valley's trademark. **(See Exhibit B)**

33.    New Spirit's website is not LegitScript certified so they can not engage in Google paid advertisements that lead directly back to their own website.

34.    Since New Spirit is not LegitScript certified they also cannot bid on keywords that are directly related to addiction treatment.

35.    ~~In order to get around not being LegitScript certified but still being able to advertise on Google, New Spirit set up a separate landing page called treatmentpages.com,~~

42.    ~~Again,~~ Again, T~~t~~reatmentpages.com and treatmentadvisors.info is not LegitScript certified ~~but~~ but since ~~because~~ treatmentpages.com and ~~does~~treatmentadvisors.info does not directly advertise a specific treatment center they~~it~~ can advertise on Google. ~~as long it is not using keywords directly related to treatment.~~

~~36.~~43.   Since treatmentpages.com and treatmentadvisors.info are not LegitScript certified and they cannot directly advertise specific treatment facilities, their advertising strategy is to pretend to be a different functioning facility in the body of the ads. This is done with the specific intent of tricking the consumer into believing they are clicking on an advertisement for the specific facility that consumer is looking for. In this case that facility would be The Valley.  **(See Exhibits C and D)**

~~37.~~44.   ~~In order to advertise on Google, New Spirit, through its website, T~~t~~reatmentpages.com and treatmentadvisors.info use~~ uses keywords directly naming other treatment centers in the  body of their ~~in~~advertisements. So, for instance when someone, who is looking for The Valley specifically, searches for The Valley MD or The Valley DMV on Google, ~~who who is looking for The Valley,~~ an ad for treamentpages.com or treatmentadvisors.info will come up pretending to be The Valley. Both of these websites go further than just using the keywords which a consumer cannot see. They also use the actual trademarked symbol "The Valley" directly in their advertisements on Google with the specific intent to trick the consumer into thinking they are finding the Plaintiff the Valley when really, they are finding advertisements for New Spirit and Innovo. **(See Exhibits C and D)**

38.45.  When a perspective patient of The Valley calls treamentpages.com or treatmentadvisors.info, after seeing "The Valley" prominently displayed in treatmentpages.com treatmentpages.com and treatmentadvisors.info ads, they are then pressured to attend New Spirit in California or Innovo in Pennsylvania instead of Plaintiff, The Valley.

39.46.  On March 28, 2025, members of The Valley were testing their Google advertisement by searching for terms like *The Valley Md* and *The Valley DMVrehab*, in Google search. During that search, an advertisement came up on the top of the page that said, **"The Valley MD, the #1 Rated in Maryland"** but instead of leading to The Valley's website it led to treamentpages.com. (**See Exhibit C**)

40.47.  That Google advertisement itself had the words The Valley MD, prominently displayed inon the advertisement the consumers could see and was purposely using The Valley's trademark to trick perspective patients into clicking on the link for treatment. This was done with the intention of misleading patients who were specifically looking for The Valley into attending New Spirit.

41.48.  The only way that advertisement would come up, using the search terms, The Valley MD was if the person setting up the advertisement asked Google to bid on keywords related to The Valley. Treatmentpages.com than specifically used an advertisement that had the word "The Valley MD" directly in it and that looked like it was advertising for the Plaintiff, The Valley. The Valley's website is www.thevalleymd.com.  (**See Exhibit C**)

42.49.  Not only was treamentpages.com using the name The Valley directly in the paid keywords on Google , treatmentpages.com was using the actual trademark "The Valley

~~in~~Valley" in the actual advertisement the public saw. They were purposely pretending to be number #1 in Maryland when in fact they are not in Maryland. Again, this was clearly done to misdirect patients looking for The Valley, specifically, and not treatment centers in general. **(See Exhibit C).**

~~43.~~50.  These Google paid advertisements were run in Maryland seeking to divert Maryland patients to a treatment center in California by using the goodwill~~.~~, The Valley, has built up over time. This was specifically done in order to target affluent patients who could either pay cash to New Spirit or who had high paying insurance policies.

~~44.~~51.  The Valley has spent considerable time and resources to promote its trademarked name to the general public through extensive marketing campaigns on the internet, electronic billboards and in print.

~~45.~~52.  On March 28, 2025, an agent of The Valley called the phone number listed at treamentpages.com and spoke with an intake officer for ~~of~~prospective patients who either worked for or was an agent of ~~of~~New Spirit. At first the intake officer would not divulge which treatment center they worked for. The intake officer just said they worked for multiple treatment centers and needed to do an intake assessment first.

~~46.~~53.  At that point the agent of The Valley provided the intake officer with his actual insurance card, which happened to be a very high paying insurance policy and told the intake officer he had a drinking problem. The intake officer then told The Valley's agent that the intake officer~~he~~ was in Maryland.

~~47.~~54.  Once New Sp~~i~~rit's intake ~~officer,~~officer verified The Valleys' agent's insurance was a high paying policy, the intake officer admitted that he worked for New Spirit and was

recommending that ~~the~~ the Valley's agent ~~person~~ go to New Spirit in California for treatment.

48.55.  The Valley's agent protested and clearly stated that he lived in Maryland and wanted to go to a Maryland facility.

49.56.  At this point the New Spirit intake officer clearly stated that all that was available in Maryland was government run facilities and because The Valley's agent had good private insurance, he would be much better off going to a high-end facility like New Spirit. The Valley's agent asked the intake officer how he would get to California, and they offered to purchase him a plane ticket to fly to New Spirit in Los Angeles.

50.57.  ~~At this point~~ The Valley's agent asked the New Spirit intake officer to call him back so he could think ~~about~~about it.

51.58.  Later that evening the intake officer for New Spirit called The Valley's agent back and began pressuring him to go to treatment at New Spirit. The Valley's agent repeated multiple times that he wanted a place closer to home and New Spirit intake officer kept saying going to California would be best.

52.59.  The Valley's agent ended the ~~call~~call, and he thought that would be the last he heard from New Spirit.

53.60.  Over the course of the next two weeks New Spirit called and texted the Valley's agent on multiple occasions and tried to talk him into going to New Spirit. Every time the Valley's agent protested and said he wanted something closer to home the New Spirit intake officer insisted all that he had available was a bed at New Spirit in California.

54.61.  On April 2 and 3, 2025 representatives from New Spirit texted, who they thought was The Valley's agent's father, and told them he was struggling with dependency and

needed their help. Asking the father to contact with his son with the intent of getting him to New Spirit.

55.62.  On April 10, 2025, a different representative of treamentpages.com called The Valley's agent and explicitly admitted they worked for New Spirit and followed that call up with a text saying they recommend New Spirit.

56.63.  On April 16, 2025, again a representative of New Spirit called The Valley's agent, and that representative followed the call up with a text trying to get The Valley's agent into treatment at New Spirit.

57.    All of the contact with New Spirit started when the agent for The Valley responded to the advertisement designated in **Exhibit C**.

64.    After becoming aware of these trademark violations, representatives of The Valley began doing internet searches for search terms The Valley MD on different days and times.

65.    Specifically, on April 18, 2025, representatives of the Valley searched the term "The Valley MD" in google at two different times of day, from different computers. During those searches, both times, an ad for https://treatmentadvisors.info/ came up with the words "The Valley MD" displayed directly in the advertisement and said let the team at The Valley MD help.  **(See Exhibit D)**

66.     On April 21, 2025, representatives of the Valley searched the term "The Valley MD" in google. During that search, an ad for https://treatmentadvisors.info/ came up with the words "The Valley MD" displayed directly in the advertisement and said let the team at The Valley MD help.  **(See Exhibit D)**

67.    On April 25, 2025, representatives of the Valley searched the term "The Valley MD" in google. During that search, an ad for https://treatmentadvisors.info/ came up with the words "The Valley MD" displayed directly in the advertisement and said let the team at The Valley MD help.  **(See Exhibit D)**

68.    On April 28, 2025, representatives of the Valley searched the term "The Valley MD" in google. During that search, an ad for https://treatmentadvisors.info/ came up with the words "The Valley MD" displayed directly in the advertisement and said let the team at The Valley MD help.  **(See Exhibit D)**

69.    On May 2, 2025, representatives of the Valley searched the term "The Valley MD" in google. During that search, an ad for https://treatmentadvisors.info/ came up with the words "The Valley MD" displayed directly in the advertisement and said let the team at The Valley MD help.  **(See Exhibit D)**

70.    On May 5, 2025, representatives of the Valley searched the term "The Valley MD" in google. During that search, an ad for https://treatmentadvisors.info/ came up with the words "The Valley MD" displayed directly in the advertisement and said let the team at The Valley MD help.  **(See Exhibit D)**

71.    On May 1, 2025, another agent of The Valley clicked on one of the offending advertisements for treatmentadvisors.info and called the toll-free number listed. That toll-free number was very similar to the toll-free number found on treatmentpages.com.

72.    The agent of The Valley told the intake officer at https://treatmentadvisors.info/  that he was seeking help with an alcohol addiction problem. The intake of officer for https://treatmentadvisors.info/ went through a ten-minute intake procedure where he asked questions about The Valley's agent's alcohol addiction problem and took his

insurance information. This was done to evaluate whether or not the Valley's agent was eligible for drug and alcohol treatment.

73.    The insurance information The Valley's agent gave to the intake officer from https://treatmentadvisors.info/ was a private commercial payor but the benefits were not as good as the benefits that were provided to treatmentpages.com on March 28, 2025.

74.    After completing the initial evaluation with the intake officer from https://treatmentadvisors.info/, The Valley's agent was referred to Innovo for treatment.

75.    Between May 3, 2025, and May 9, 2025, numerous different people texted the Valley's agent from 1-844-425-1276 purporting, to be from https://treatmentadvisors.info/ attempting to get The Valley's agent to attend Innovo. The 1-844-425-1276 phone number is the same exact number that representatives from treatmentpages.com used to contact The Valley's other agent, on March 28, 2025, when they attempted to get that person to attend New Spirit.

76.    On June 1, 2025, Domains by Proxy responded to a subpoena request from The Valley and supplied the ownership information for Treatmentpages.com and https://treatmentadvisors.info/. The owner of https://treatmentadvisors.info/ is a nonexistent company called Admission Team, but lists Phelan, at her home address, as the contact. The owner of treatmentpages.com is a Florida corporation, Treatment Outreach Services Inc., which lists Phelan, at her home address, as the contact. **(See Exhibit E)**

77.    Treatmentpages.com and https://treatmentadvisors.info/ are agents for New Spirit and Innovo or in the alternative they are all owned by the same people.

58.78.  -The Plaintiff 's damages, and losses were solely and proximately caused by the

Defendants, their agents, and their employees.

59.79.  New Spirit, Innovo, Treatment Out and Phelan profited significantly from the illegal use

of The Valley's trademark.

## COUNT I.- FEDERAL TRADEMARK INFRINGEMENT

(All four defendants)

60.80.  Plaintiff incorporates by reference the preceding paragraphs as if set forth fully herein,

and states further.

61.81.  New Spirit's, Innovo's , Treatment Out's and Phelan's use of a near identical phrase The Valley,

which is trademarked, is likely and was intended to cause confusion, deception, and mistake by

creating the false and misleading impression that New Spirit's, Innovo's, Treatment Out's and

Phelan's treatment centers, through treatmentpages.com and https://treatmentadvisors.info/,

is actually The Valley treatment center.

62.     New Spirit's actions demonstrate an intentional, willful, and malicious intent to trade on

the goodwill associated with The Valley.

82.     New Spirit's, Innovo's, Treatment Out's and Phelan's actions demonstrate an intentional,

willful, and malicious intent to trade on the goodwill associated with The Valley.

63.      New Spirit caused and is likely to continue causing substantial injury to the public and

to The Valley, and The Valley is entitled to recover New Spirit's profits, actual

damages, enhanced profits and damages, costs, and reasonable attorneys' fees under

15U.S.C. §§ 1114, 1116, and 1117.

83.     New Spirit, Innovo's, Treatment Out's and Phelan's actions caused and is likely to continue

causing substantial injury to the public and to The Valley, and The Valley is entitled to

recover New Spirit's, Innovo's, Treatment Out's and Phelan's profits, actual damages,

enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117. Further, in light of the deliberate and malicious use of a confusingly similar imitation of The Valley's Mark, and the need to deter New Spirit, Innovo, Treatment Out and Phelan from engaging in similar conduct in the future, The Valley additionally is entitled to punitive damages.

64. U.S.C. §§ 1114, 1116, and 1117.

## COUNT II. -FEDERAL UNFAIR COMPETITION

(All four defendants)

65.84.  Plaintiff incorporates by reference the preceding paragraphs as if set forth fully herein, and states further.

66.85.  New Spirit's, Innovo's, Treatment Out's and Phelan's use of a near identical trademarked phrase The Valley, has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that New Spirit's, Innovo's, Treatment Out's and Phelan's treatment center is affiliated, connected, or associated with The Valley, or have the sponsorship, endorsement, or approval of The Valley, or furthermore may actually be The Valley.

86.    New Spirit, Innovo, Treatment Out and Phelan -haves made false representations, false descriptions, and false designations of, on, or in connection with its services in violation of 15 U.S.C. § 1125(a). New Spirit's, Innovo's, Treatment Out's and Phelan's activities have continued to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to The Valley's goodwill.

67.

68.    New Spirits' conduct has caused, and is likely to continue causing, substantial injury to the public and to the Valley. The Valley is entitled to recover New Spirit's profits, actual

~~damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.~~

87.    New Spirits', Innovo's, Treatment Out's and Phelan's conduct has caused, and is likely to continue causing, substantial injury to the public and to the Valley. The Valley is entitled to recover New Spirit's, Innovo's, Treatment Out's and Phelan's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117. Further, in light of the deliberate and malicious use of a confusingly similar imitation of The Valley's Mark, and the need to deter New Spirit, Innovo, Treatment Out and Phelan from engaging in similar conduct in the future, The Valley additionally is entitled to punitive damages.

## COUNT III.~~-~~ COMMON LAW TRADEMARK AND UNFAIR COMPETITION

(All four defendants)

~~69.~~88.  Plaintiff incorporates by reference the preceding paragraphs as if set forth fully herein, and states further.

~~70.~~89.  ~~On information and belief,~~ New Spirit, Innovo, Treatment Out and Phelan acted with full knowledge of The Valley's use of, and statutory and common law rights to~~,~~ The Valley's Mark and without regard to the likelihood of confusion of the public created by New Spirit's activities.

~~71.~~90.   New ~~Spirit's~~ Spirit's, Innovo's, Treatment Out's and Phelan's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with The Valley's Mark to the great and irreparable injury of The Valley

91.    As a result of New Spirit's, Innovo's, Treatment Out's and Phelan's acts, The Valley has been damaged in an amount not yet determined or ascertainable. At a minimum,

however, The Valley is entitled to an accounting of New Spirit's Innovo's, Treatment Out's and Phelan's profits, damage, and costs. Further, in light of the deliberate and malicious use of a confusingly similar imitation of The Valley's Mark, and the need to deter New Spirit, Innovo, Treatment Out and Phelan, from engaging in similar conduct in the future, The Valley additionally is entitled to punitive damages.

Further, in light of the deliberate and malicious use of a confusingly similar imitation of The Valley's Mark, and the need to deter New Spirit from engaging in similar conduct in the future, The Valley

**COUNT IV. - MARYLAND COMMON LAW TRADEMARK INFRINGEMENT**

(All four defendants)

72.92.  Plaintiff incorporates by reference the preceding paragraphs as if set forth fully herein, and states further.

73.93.  The Valley has been using the mark, The Valley, in addiction treatment commerce sonce since they opened their doors in 2021.

74.94.  On information and belief, New Spirit, Innovo, Treatment Out and Phelan acted with full knowledge of The Valley's use of, and statutory and common law rights to too, The Valley's Mark and without regard to the likelihood of confusion of the public created by New Spirit's, Innovo's, Treatment Out's and Phelan's activities.

75.  New Spirit, Innovo, Treatment Out and Phelan purposely, intentional, willful, and with malicious intent, made used this mark to advertise its own addiction treatment centers and the advertisements were displayed within the borders of Maryland.

95.

96.    As a result of New Spirit's Innovo's, Treatment Out's and Phelan's acts, The Valley has been damaged in an amount not yet determined or ascertainable. At a minimum, however, The Valley is entitled to an accounting of New Spirit's Innovo's, Treatment

Out's and Phelan's profits, damage, and costs. Further, in light of the deliberate and malicious use of a confusingly similar imitation of The Valley's Mark, and the need to deter New Spirit, Innovo, Treatment Out and Phelan New Spirit from engaging in similar conduct in the future, The Valley additionally is entitled to punitive damages.

### COUNT V. -VIOLATION OF MD. COMMERCIAL LAW CODE ANN. § 13-301

(All four defendants)

97.    Plaintiff incorporates by reference the preceding paragraphs as if set forth fully herein, and states further.

98.    New Spirit's, Innovo's, Treatment Out's and Phelan's use of a near identical trademarked phrase The Valley, has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that New Spirit', Innovo's, Treatment Out's and Phelan's treatment centers are affiliated, connected, or associated with The Valley, or have the sponsorship, endorsement, or approval of The Valley, or furthermore may actually be The Valley.

99.    New Spirit, Innovo, Treatment Out and Phelan have made false representations, false descriptions, and false designations of, on, or in connection with its services in violation of Md. Commercial Law Code Ann. § 13-301(1) and (3). New Spirit's, Innovo's, Treatment Out's and Phelan's activities have continued to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to The Valley's goodwill.

100.   New Spirits', Innovo's, Treatment Out's and Phelan's conduct has caused, and is likely to continue causing, substantial injury to the public and to the Valley. The Valley is entitled to recover New Spirit's, Innovo's, Treatment Out's and Phelan's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees. Further,

in light of the deliberate and malicious use of a confusingly similar imitation of The Valley's Mark, and the need to deter New Spirit, Innovo, Treatment Out and Phelan from engaging in similar conduct in the future, The Valley additionally is entitled to punitive damages.

### COUNT VI. - CONSPIRACY TO VIOLATE 15 U.S.C. § 1125(a) & MD. COMMERCIAL LAW CODE ANN. § 13-3013-301(1) AND (3)

(All four defendants)

101.    New Spirit, Innovo, Treatment Out and Phelan agreed to work together to violate The Valley's trademark.

102.    New Spirit's, Innovo's, Treatment Out's and Phelan's devised a scheme in which Treatment Out and Phelan would advertise on Google using The Valley's trademark in order to cause confusion, deception, and mistake by creating the false and misleading impression that New Spirit' and Innovo's treatment centers are affiliated, connected, or associated with The Valley, or have the sponsorship, endorsement, or approval of The Valley, or furthermore may actually be The Valley.

103.    These acts were in violation of Md. Commercial Law Code Ann. § 13-301(1) and (3) and 15 U.S.C. § 1125(a).

104.    Treatment Out and Phelan purposely and willfully, at the direction of New Spirit and Innovo, used The Valley's trademark to advertise for New Spirit and Innovo's treatment centers, with the intent of tricking perspective patients of The Valley who were looking for The Valley to instead attend New Spirit and Innovo's treatment centers.

105.    The Valley has and will continue to suffer damage as a result of this conspiracy to violate Md. Commercial Law Code Ann. § 13-301(1) and (3) and 15 U.S.C. § 1125(a).

106.    New Spirits', Innovo's, Treatment Out's and Phelan's conduct has caused, and is likely to continue causing, substantial injury to the public and to the Valley. The Valley is entitled to recover New Spirit's, Innovo's, Treatment Out's and Phelan's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees. Further, in light of the deliberate and malicious use of a confusingly similar imitation of The Valley's Mark, and the need to deter New Spirit, Innovo, Treatment Out and Phelan from engaging in similar conduct in the future, The Valley additionally is entitled to punitive damages.

WHEREFORE, for the foregoing reasons Plaintiff, Hagerstown Recovery LLC DBA The Valley prays,

1.   New Spirit be compelled to account to The Valley for any and all profits derived by New Spirit from the use of the infringing Mark by accounting for all patients that have attended their program from the State of Maryland to be determined by a jury;

2.   Innovo be compelled to account to The Valley for any and all profits derived by New Spirit from the use of the infringing Mark by accounting for all patients that have attended their program from the State of Maryland to be determined by a jury;

3.   Treatment Out be compelled to account to The Valley for any and all profits derived by New Spirit from the use of the infringing Mark by accounting for all patients that have attended their program from the State of Maryland to be determined by a jury;

1.4. Phelan be compelled to account to The Valley for any and all profits derived by New Spirit from the use of the infringing Mark by accounting for all patients that have attended their program from the State of Maryland to be determined by a jury;

2.5. The Valley be awarded all damages caused by the acts forming the basis of this Complaint to be determined by a jury;

6.    Based on New Spirit's knowing and intentional use of ~~a~~an exact iteration of The Valley Mark, the damages awarded be trebled and the award of New Spirit's profits be enhanced as provided for by 15 U.S.C. § 1117(a);

7.    Based on Innovo's knowing and intentional use of an exact iteration of The Valley Mark, the damages awarded be trebled and the award of Innovo's profits be enhanced as provided for by 15 U.S.C. § 1117(a);

8.    Based on Phelan's knowing and intentional use of a exact iteration of The Valley Mark, the damages awarded be trebled and the award of Phelan's profits be enhanced as provided for by 15 U.S.C. § 1117(a);

3.9. Based on Treatment Out's knowing and intentional use of an exact iteration of The Valley Mark, the damages awarded be trebled and the award of Treatment Out's profits be enhanced as provided for by 15 U.S.C. § 1117(a);

4.10.    New Spirit, Innovo, Phelan and Treatment Out be required to pay to The Valley the costs and reasonable attorneys' fees incurred by The Valley in this action pursuant to 15 U.S.C. § 1117(a);

11. Based on New Spirit's, willful and deliberate infringement and/or dilution of The ~~Valley Mark~~Valley Mark, and to deter such conduct in the future, The Valley be awarded punitive damages;

12. Based on Innovo's, willful and deliberate infringement and/or dilution of The Valley Mark, and to deter such conduct in the future, The Valley be awarded punitive damages;

13. Based on Treatment Out's willful and deliberate infringement and/or dilution of The Valley Mark, and to deter such conduct in the future, The Valley be awarded punitive damages;

5.14.    Based on Phelan's, willful and deliberate infringement and/or dilution of The Valley Mark, and to deter such conduct in the future, The Valley be awarded punitive damages;

6.15.    The Valley be awarded prejudgment and post-judgment interest on all monetary awards; and

7.16.    The Valley be granted such other and further relief as the Court may deem just.

Respectfully submitted,

KURTZ, PETERS & ASSOCIATES LLC.

By: /s/ Benjamin M. Kurtz

Benjamin M. Kurtz, Esquire
Maryland Federal Bar No. 20602
350 Camino Gardens Blvd., Suite 300
Boca Raton, Florida 33432
Ph: 301-685-3911 Fx: 301-685-3674
bkurtz@kurtzandpeters.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 4th day of June 2025, a copy of this Amended Complaint was filed and served, electronically, via this Court's CM/ECF e-filing system, on all counsel of record.

## JURY TRIAL DEMAND

Plaintiff, by and through undersigned counsel, respectfully demands a jury trial on all issues and causes of action contained herein.

_____ /s/ Benjamin M. Kurtz
_____.
Benjamin M. Kurtz, Esquire