# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## (SOUTHERN DISTRICT)

HAGERSTOWN RECOVERY LLC
DBA THE VALLEY
19120 MUNCASTER RD.
DERWOOD, MD 20855,

    Plaintiff,

  v.

NEW SPIRIT RECOVERY LLC C/O
ARTHUR KAZANCHIAN
17856 CATHEDRAL PL
ENCINO, CA 91316,

  &

TREATMENT OUTREACH SERVICES
INC. C/O JESSICA PHELAN
1163 FERNLEA DR WEST PALM BEACH,
FL 33417

  &

JESSICA PHELAN-personally 1163
FERNLEA DR WEST PALM BEACH, FL
33417

  &
POLARIS DETOX LLC DBA
INNOVO DETOX
7007 YORK RD.
ABBOTTSTOWN, PA 17301

    Defendants.

Case No.: 8:25-cv-01252-DKC
Jury Trial Demanded

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT**

**NEW SPIRIT RECOVERY LLC'S MOTION TO DISMISS**

Defendant New Spirit Recovery LLC ("Defendant" or "NSR") moves under Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss Plaintiff Hagerstown Recovery LLC's

("Plaintiff") Amended Complaint because NSR is not subject to personal jurisdiction in Maryland for the asserted claims. In the alternative, NSR moves under Rule 12(b)(6) to dismiss Plaintiff's Amended Complaint because it fails to allege a plausible claim for relief.

## I.    INTRODUCTION

Plaintiff seeks to drag a small California rehabilitation facility 2,600 miles across the country to defend a trademark case in a forum with which it has no meaningful connection whatsoever. New Spirit Recovery has no physical presence, employees, bank accounts, or property in Maryland; has never targeted Maryland through advertising, online or otherwise; and can affirmatively demonstrate—by sworn declaration submitted herewith—that it did not purchase the Google advertising keyword "The Valley MD" or engage in any of the alleged telephone calls which Plaintiff invokes as a basis for jurisdiction. Even if NSR *had* bid on "The Valley MD," the theory that such keyword *targets* Plaintiff is pure fantasy. In Los Angeles, "The Valley" is ubiquitous geographic jargon; it is common for San Fernando Valley-based companies to refer to "The Valley" in their branding and advertisements, and every Angelino knows what it means. Under well-settled Fourth Circuit precedent, non-resident defendants may not be haled into Maryland federal court based on passive, untargeted online advertising. In short, there is no basis for jurisdiction because Plaintiff cannot show by a preponderance of the evidence that any alleged conduct by NSR relates to Maryland in any way, shape, or form.

Nor does Plaintiff's Amended Complaint state a plausible claim for relief against NSR. Plaintiff has failed to articulate any specific allegations of "infringement" *against NSR* as distinct from the other defendants. Plaintiff's vague allegations of an "agency" relationship with the other defendants is insufficient. Moreover, Courts have recently held that purchasing keyword advertising including the trademarks of others, without other deceptive conduct, is not trademark infringement. As such, the Amended Complaint fails to state a plausible claim for relief and must be dismissed as against NSR.

## II. RELEVANT BACKGROUND

### A. Defendant NSR and its Treatment Facility in "The Valley" in Los Angeles

Defendant NSR is a residential addiction recovery and detox center which provides a nurturing environment for individuals to recover from drug and alcohol addiction and reclaim their lives. Declaration of Leshon Hill, CEO of NSR ("Hill Decl.") ¶ 3. NSR is based in Encino, which is a suburb in the San Fernando Valley located in Los Angeles, California. *Id.*, ¶ 4. NSR is a small company and serves patients in and around Encino, where its treatment center is located. *Id*. It operates only in Los Angeles and serves patients from around Greater Los Angeles and Southern California. *Id*. For example, NSR's website clearly states, "New Spirit Recovery serves people throughout Los Angeles and all of California. Call us today…." *Id*., Ex. A.

The San Fernando Valley is commonly referred to as "The Valley." *Id.*, ¶ 5. The Valley is featured in countless films and in popular culture, and people around the United States and the world understand "The Valley" refers to this well-known geographic location in Los Angeles. *Id*. For example, a Wikipedia article for "San Fernando Valley" explains:

> The **San Fernando Valley**, known locally as the **Valley**, is an urbanized valley in Los Angeles, California. [] The valley is the home of Warner Bros. Studios, Walt Disney Studios, and the Universal Studios Hollywood theme park.

*Id*., Ex. B. Another news article from the Wall Street Journal entitled "Living in 'the Valley' Is, Like, Cool Now" explains: "The majority of the San Fernando Valley lies within the city of Los Angeles, but locals nonetheless tend to refer to it as 'the Valley' and to the rest of Los Angeles as 'the city.'" *Id.*, ¶ 6, Ex. C.

NSR is a California limited liability company whose members are California residents. *Id.*, ¶ 7; *see also* Amended Complaint, ECF No. 10 ["Compl."], ¶ 2. NSR does not have any employees, officers, directors, agents, or representatives in Maryland, and never has. Hill Decl., ¶ 8. NSR does not have any offices or any physical presence in Maryland, and does not conduct any business activities of any kind in Maryland. *Id.*, ¶ 11. NSR does not have any bank accounts, property, phone listings, or state registrations in Maryland. *Id.*, ¶ 12.

NSR has never targeted Maryland through advertising, online or otherwise. *Id.*, ¶ 16. NSR's website at *www.newspiritrecovery.com* is informational in nature and promotes NSR's services provided in Southern California. *Id.* The website is not targeted to Maryland residents. *Id.* The website is nationally accessible but has no Maryland-focused content, pricing, or promotions. *Id.* The contact form for potential patients directs them to a California phone number and Los Angeles address. *Id.* "Maryland" is not mentioned anywhere on the website precisely because NSR does not target Maryland residents; NSR is a Los Angeles-based facility focused on treating patients locally in Greater Los Angeles and Southern California. *Id.*

### B. Plaintiff Hagerstown and Its Complaint

Plaintiff Hagerstown Recovery LLC, based in Maryland, is also an addiction treatment center. Plaintiff filed its initial Complaint on April 17, 2025 alleging NSR "infringed" Plaintiff's claimed trademark "The Valley." *See* ECF No. 1.

Plaintiff initially sued based on its mistaken belief that NSR owns or operates the websites "treatmentpages.com" and "https://treatmentadvisors.info/" which allegedly employ Google keyword advertising with the phrase "The Valley MD" to "lure" Maryland customers to NSR in California. *Id.*, ¶¶ 36-43. After Plaintiff served a subpoena on Domains By Proxy and discovered NSR was *not* the owner of the domains, *Id.*, Ex. E, it amended its complaint—backpedaling the allegations against NSR and removing allegations NSR owns and controls the domains. *See* Compl. Plaintiff was required to amend under Rule 11 because it knew the allegations were false: NSR does not own or control, and is not affiliated with, "treatmentpages.com" or https://treatmentadvisors.info/, the two websites which allegedly "infringe" Plaintiff's claimed trademark "The Valley." Hill Decl., ¶¶ 9, 10. Furthermore, NSR has *never* purchased any keyword advertising containing the term "The Valley MD" or any Maryland-specific words or phrases. *Id.*, ¶ 13. Plaintiff now falls back to allege NSR is an "agent" of the other defendants and that treatmentpages.com and treatmentadvisors.info are "all owned by the same people" and "all four Defendants decided to violate the Valley's trademark" by using the keyword "The Valley MD." Compl. at ¶¶ 38-40, 44-50, 77.

-4-
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NEW SPIRIT RECOVERY LLC'S MOTION TO DISMISS**
**Case No.: 8:25-cv-01252-DKC**

Plaintiff's only other allegation is that NSR had an "intake officer" who "either worked for or was an agent of [NSR]" that spoke with "an agent of [Plaintiff]" in multiple telephone calls *which Plaintiff initiated*. *See* Compl. at ¶ 52. The alleged NSR intake officer said he was in Maryland. *Id*. All of this is false. **NSR never had any of the telephone calls with Plaintiff's agent as alleged in the Amended Complaint.** Hill Decl., ¶ 14. NSR does not have any "intake officers," employees, agents, or personnel in Maryland. *Id*. NSR has never had anyone "work[ing] for" NSR or otherwise acting as an "agent" of NSR in Maryland. *Id*.

NSR has never admitted or treated any Maryland patient at its facility arising out of or relating to the purchase of any keyword advertising alleged in the Amended Complaint. *Id.*, ¶ 15. NSR has never admitted, treated, solicited, or even spoken to any Maryland resident as a result of any alleged advertising involving "The Valley MD" or any other allegations in the Amended Complaint, which are false. *Id.* Simply put, NSR is based in California and has no connection with the State of Maryland.

### III.     LEGAL STANDARDS

#### A.     Plaintiff's Burden To Establish Personal Jurisdiction

On consideration of a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the burden [is] on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Although the plaintiff need only make a prima facie showing of jurisdiction when the issue is decided without an "evidentiary hearing," the hearing requirement is met (and the burden is higher) when the parties are "given a fair opportunity to develop the record regarding personal jurisdiction" with exhibits and affidavits submitted with the motion and opposition papers. *Sneha Media & Ent., LLC v. Assoc. Broadcasting Co.*, 911 F.3d 192, 197 (4th Cir. 2018); *see also Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) ("[B]ecause defendants file Rule 12(b)(2) motions precisely because they believe that they lack any meaningful contacts with the forum State where the plaintiff has filed suit," a court should "follow a procedure that allows it to dispose of the motion as a preliminary matter."). Thus, following the hearing on

this motion, the Amended Complaint must be dismissed against NSR unless Plaintiff satisfies its burden to establish jurisdiction under the preponderance of evidence standard.

### B.     Fourth Circuit Test for Personal Jurisdiction

A district court may not exercise personal jurisdiction over a challenging defendant unless two conditions are met: "(1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.*  In Maryland, the long-arm statute is coterminous with due-process limitations, so the statutory and constitutional analyses merge.  *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).

The Supreme Court has recognized two different types of personal jurisdiction: general and specific.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  A court may exercise general jurisdiction over a corporation when "their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Id.* at 919.

A court may not exercise *specific* jurisdiction unless  has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Courts consider three factors in determining whether specific jurisdiction exists:

> (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable."

*Carefirst*, 334 F.3d at 397.  The minimum-contacts test "is designed to ensure that the defendant is not 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'" *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  The high constitutional bar for specific jurisdiction "protects a defendant from having to defend himself in a forum where he should not have anticipated being sued." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "Because a sovereign's jurisdiction remains territorial, to justify the exercise of personal jurisdiction

over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that 'they amount to a surrogate for presence and thus render the exercise of sovereignty just.'" *Id.* at 277-78 (quoting *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir.1997)).

The Fourth Circuit has expressly adopted a model for applying the minimum-contacts test in cases involving internet-based media. Consistent with due process, a court may only exercise specific personal jurisdiction over a defendant who:

> (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*ALS Scan*, 293 F.3d at 714. Under *ALS Scan*, one who "simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received." *Id.*; *see also ESAB Group*, 126 F.3d at 625-26 (emphasizing importance of evidence that defendant expressly aimed or directed its conduct toward forum state and noting that business activities focusing "generally on customers located throughout the United States and Canada without focusing on and targeting" forum state cannot yield personal jurisdiction). For a company's website or online advertising to subject the company to specific jurisdiction in Maryland, the character of the website at issue must show "the 'manifest intent' of targeting Marylanders." *Carefirst*, 334 F.3d at 400.

### C. Pleading Standard Under *Twombly* and *Iqbal*

To state a claim under Rule 12(b)(6), a plaintiff must allege facts that "nudge their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (quotation marks and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the

parties and the court." *Id*. at 558 (quotation marks and citation omitted).

## IV. NEW SPIRIT IS NOT SUBJECT TO THE COURT'S PERSONAL JURISDICTION

### A. NSR Is Not Subject to General Jurisdiction in Maryland

As Plaintiff acknowledges, NSR is a California LLC—whose members are California citizens—located in California that only treats patients in California. Amended Complaint, ¶¶ 2, 34. Plaintiff does not allege NSR has continuous or systematic affiliations with Maryland—which NSR does not. Thus, the parties agree the Court lacks general jurisdiction.

### B. NSR Is Not Subject to Specific Jurisdiction in Maryland

Applying the Fourth Circuit's three-part test, through the *ALS Scan* framework for online content, traditional notions of fair play and substantial justice do not permit Plaintiff to maintain this action in Maryland against NSR. NSR did not purposefully avail itself of Maryland—it neither targeted nor transacted with the forum. Plaintiff's claims do not arise out of any Maryland-directed activities, because none exists. Forcing a California-only provider to defend in Maryland would be constitutionally unreasonable given the total absence of forum contacts.

NRS has not purposefully availed itself of the forum because NSR has not directed electronic activity into Maryland with the manifested intent of engaging in business or other interactions here. In *Carefirst*, the Fourth Circuit affirmed this Court's refusal to exercise personal jurisdiction over an Illinois nonprofit whose semi-interactive website allegedly infringed the trademark rights of a Maryland company. 334 F.3d 390 (4th Cir. 2003). There, "Carefirst of Maryland" accused Chicago-based "Carefirst Pregnancy Centers, Inc." of selecting the name "Carefirst" despite having notice of the plaintiff's federal registrations and common law use of the "Carefirst" mark. *Id.* at 393-94. The nonprofit had also contracted with a web hosting and web development company headquartered in Maryland, and the web company purchased www.carefirstpc.com and several similar domain names on the nonprofit's behalf. *Id.* at 394. The nonprofit's website was accessible from Maryland and had garnered donations from at least nine Maryland residents. *Id.* at 394-95.

In dismissing the complaint for lack of personal jurisdiction, the District of Maryland found:

-8-
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NEW SPIRIT RECOVERY LLC'S MOTION TO DISMISS**
**Case No.: 8:25-cv-01252-DKC**

> CPC operated primarily in Chicago; had no office, telephone listing, employees, agents, or sales representatives in Maryland; had never directly solicited funds from Maryland residents or otherwise targeted the forum; had received a de minimus portion of its charitable contributions from Maryland residents; and had recived nearly all of those contributions by mail, rather than online. [Citation]. The court went on to find that CPC's only connections to Maryland arose from the facts that (1) its website could be accessed from anywhere in the world, including Maryland; and (2) the website's "host" was a Maryland corporation. Id.

*Id.* at 395.  Here, the facts counsel even more strongly in favor of dismissal.  NSR operates exclusively in California and has no affirmative connection whatsoever to Maryland.  Unlike in *Carefirst*, there is no evidence of any Maryland residents interacting with NSR's website or using its services as a result of the alleged keyword advertising.  NSR's only purported connections to Maryland come from (1) Plaintiff *wrongly* alleging that two websites (which NSR does not own or control) featured keyword advertising containing "The Valley MD" and (2) alleged telephone calls purportedly between an "intake officer" of NSR and Plaintiff's agent—which *never happened*, and which Plaintiff fails to allege resulted in any placement of a patient at NSR.  Even if the alleged facts were true (and they are not), they would be woefully insufficient to establish personal jurisdiction over NSR under *Carefirst* and *ALS Scan*.

        Similarly, although not in the trademark context, this Court in *Rao v. Era Alaska Airlines* held that an Alaska-based regional carrier (Era) was not subject to personal jurisdiction in Maryland where the carrier's only contact with the forum was the plaintiffs' decision—made from Maryland—to buy tickets online for flights that both originated and ended entirely within Alaska.  22 F. Supp. 3d 529 (D. Md. 2014).  The airline itself did nothing to court Maryland travelers: its advertising was confined to Alaska, and its website merely made tickets universally available on the internet.  In dismissing the complaint, the court found that Era "was not 'locating customers' in Maryland" and did not "'manifest intent of engaging in business or other interactions within' Maryland." *Id.* at 540 (quoting *ALS Scan*, 293 F.3d at 714).  Although Era's website was accessible to potential passengers anywhere, its services could be used by passengers "only if they first came to Alaska to board their flight." *Id.*  Accordingly, the court held: "It is not apparent that Era did anything affirmatively to reach into this jurisdiction; as in *Carefirst*, a single Maryland transaction reflected nothing more than the 'generalized' possibility that 'anyone, anywhere' may buy a ticket." *Id.* (citing *Carefirst*,

-9-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NEW SPIRIT RECOVERY LLC'S MOTION TO DISMISS**
**Case No.: 8:25-cv-01252-DKC**

334 F.3d at 401).

This Court's precedent in *Carefirst* and *Rao* compels dismissal on the instant facts. In our case, there is not *even* a single Maryland transaction, nor is there any relationship between Plaintiff and NSR akin to the customer–airline relationship in *Rao*. There was no advertising directed to Maryland, and the alleged telephone calls did not involve NSR, which does not have any "intake officers" or other representatives in Maryland. There is simply no connection between NSR and Maryland which could establish personal jurisdiction. Plaintiff's claims against NSR must be dismissed under the Due Process Clause.

## V.  PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF

Plaintiff's trademark infringement allegations fail to state a claim under the Supreme Court's guidance in *Twombly* and *Iqbal*, particularly in light of recent trademark precedent. The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"—a standard Plaintiff's scant allegations against NSR cannot meet. *Iqbal*, 556 U.S. at 678. Plaintiff's allegations fail, both because Plaintiff only plausibly alleges wrongdoing against *other* defendants (and *not* NSR) and because, even if Plaintiff's best-pleaded allegations *were* directed at NSR, they fall short of the bar for stating a plausible trademark infringement claim.

In *Iqbal*, the Supreme Court established a framework for analyzing the sufficiency of pleadings under Rule 8(a). Under *Iqbal*, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements." *Id.* at 678. Accordingly, the Court should begin its analysis "by identifying allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Then, the Court only may consider "well-pleaded factual allegations" in determining whether the complaint has "nudged [Plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

*Iqbal*'s facts are illustrative. There, Iqbal's complaint alleged that John Ashcroft and Robert Mueller—the former U.S. Attorney General and the Director of the FBI, respectively—"knew of, condoned, and willfully and maliciously agreed to subject [Iqbal]" to harsh conditions of

confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." *Iqbal*, 556 U.S. at 680.  The complaint also alleged that Ashcroft was the "principal architect" of this policy and that Mueller was "instrumental" in adopting and executing it.  *Id.* at 681.  The Supreme Court held these allegations insufficient: "These bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a 'formulaic recitation of the elements'" of Iqbal's claims.  *Id.*

Here, Plaintiff's allegations against NSR fail for exactly the same reason—indeed, the Amended Complaint here is even more clearly insufficient than the complaint in *Iqbal*.  Plaintiff alleges only that the two websites "treatmentpages.com" and "treatmentadvisors.info" used keyword advertising involving the phrase "The Valley MD" (Amended Complaint, ¶¶ 44-50) and that the defendants are "agents" of one another and/or the websites are "all owned by the same people" and "all four Defendants decided to violate the Valley's trademark to lure patients to their facilities while trading on The Valley's goodwill." *Id.*, ¶¶38-40, 77.

As in *Iqbal*, the referenced paragraphs contain only threadbare recitals of conclusory jargon—*e.g.*, that "all four Defendants" engaged in trademark violations by purchasing and using geographically descriptive keyword advertising on two websites allegedly "all owned by the same people," and they are "agents" of each other.  These broad, conclusory (and vague) characterizations are not entitled to an assumption of truth, and none of the remaining allegations in the Amended Complaint state a claim.

Beyond that, Plaintiff fails to point out what it believes *NSR* did to cause Plaintiff harm, *separate and apart from the other defendants*.  Again, *Iqbal* is instructive.  The Supreme Court in *Iqbal* based its holding solely on the allegations *directed at the relevant defendants*, Ashcroft and Mueller, and the plaintiff could not avoid dismissal by pointing to allegations directed at *other defendants*.  Although Iqbal's complaint alleged that numerous defendants "kicked him in the stomach" and "punched him in the face" (among other alleged mistreatment), the Supreme Court emphasized: "The allegations against [Ashcroft and Mueller] are the only ones relevant here"—i.e., where a motion to dismiss brought by Ashcroft and Mueller was at issue. *Iqbal*, 556 U.S. at 668.  As

-11-
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NEW SPIRIT RECOVERY LLC'S MOTION TO DISMISS**
**Case No.: 8:25-cv-01252-DKC**

in *Iqbal*, the only specific allegations relate to the alleged actions of *the other, new defendants*, not NSR. Plaintiff has improperly conflated NSR with the other defendants, without alleging any specific instances of misconduct against *NSR* as distinct from the other defendants. This is plainly insufficient to plausibly state a claim against NSR.

Finally, even if the relevant allegations *were* stated against NSR in particular (which they are not—nor could they be), use of a competitor's trademark in keyword advertising *alone* is not trademark infringement. If there were any doubt previously, courts recently have expressly recognized in the advertising context that it is a "a permissible and standard industry practice" for businesses to bid on competitor's trademarks during search advertising auctions, and the mere purchase of keyword advertising containing a competitor's trademark, without other evidence of deception, is not infringement. *See Lerner & Rowe PC v. Brown Engstrand & Shelt LLC*, 119 F.4th 711 (9th Cir. October 22, 2024); *1-800 Contacts v. JAND, Inc., dba Warby Parker*, 119 F.4th 234 (2d Cir. October 8, 2024).

Here, Plaintiff's theory that NSR purchased "Valley"-related keywords to *target* Plaintiff is pure fantasy. As noted, in Los Angeles, "The Valley" is ubiquitous geographic jargon. NSR's alleged bidding on "The Valley MD"—which allegation is now credibly contradicted by NSR's evidence submitted herewith, because it is false—without more, is simply insufficient to rise to the level of trademark infringement.

## VI. THE COURT SHOULD DENY LEAVE TO AMEND

Although the foregoing analysis under 12(b)(2) and 12(b)(6) applies with equal force to both iterations of Plaintiff's Complaint, it should be noted that Plaintiff filed its Amended Complaint in clear violation of Rule 15, more than 21 days after the initial Complaint and without leave of the Court or NSR's written consent. Plaintiff already has helped itself to an amended pleading without permission, and the Court should not grant another. A district court may deny a plaintiff's request for leave to amend the complaint when the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Newport News Holdings Corp. v. Virtual City Vision. Inc.*, 650 F.3d 423, 439 (4th Cir. 2011). Here, no amendment could possibly save Plaintiff's claims against NSR, under

Rule 12(b)(2) or Rule 12(b)(6). Plaintiff already has put its best foot forward, and no facts exist that could establish a basis for jurisdiction over NSR or nudge Plaintiff's claims against NSR over the line from conceivable to plausible. Accordingly, the Court should dismiss the Amended Complaint against NSR with prejudice.

## VII.   CONCLUSION

Because NSR has no Maryland contacts that satisfy the Fourth Circuit's "minimum-contacts" test, the Court should dismiss the Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2). In any event, the pleading fails to allege facts that plausibly state a trademark claim against NSR, so dismissal is also warranted under Rule 12(b)(6). Given Plaintiff's prior amendment and the fundamental defects identified above, further amendment would be futile, and the dismissal should therefore be entered with prejudice.

Respectfully submitted,

DATED: June 18, 2025

WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP

By:  */s/ Paulo A. de Almeida*
Admitted *pro hac vice*
11400 W. Olympic Blvd., 9th Floor
Los Angeles, California 90064
PH: 310-478-4100 Ext. 6609
pdealmeida@wrslawyers.com

LUTZKER & LUTZLER LLP
By: /s/ *Jeannette M. Carmadella*
Jeannette Maurer Carmadella
(Maryland Federal Bar No. 29648)
Arnold P. Lutzker
(Maryland Federal Bar No. 29660)
1850 M. St. NW, Suite 1060
Washington, DC 20036
Ph: 202-408-7600
jeannette@lutzker.com
arnie@lutzker.com

Counsel for Defendant,
New Spirit Recovery LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 18th day of June, 2025, a copy of the foregoing document was electronically delivered to:

>KURTZ, PETERS & ASSOCIATES LLC
>Benjamin M. Kurtz, Esquire
>350 Camino Gardens Blvd., Suite 300
>Boca Raton, Florida 33432
>Ph: 301-685-3911 Fx: 301-685-3674
>bkurtz@kurtzandpeters.com

By: /s/ Paulo A. de Almeida
Paulo A. de Almeida

-14-
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NEW SPIRIT RECOVERY LLC'S MOTION TO DISMISS**
**Case No.: 8:25-cv-01252-DKC**