IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HAGERSTOWN RECOVERY LLC　　　　　:
d/b/a The Valley　　　　　　　　　:

　　　v.　　　　　　　　　　　　:　Civil Action No. DKC 25-1252

　　　　　　　　　　　　　　　　:
NEW SPIRIT RECOVERY LLC, et al.
　　　　　　　　　　　　　　　　:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this trademark infringement case are the motion to dismiss filed by Defendant New Spirit Recovery, LLC ("New Spirit"), (ECF No. 14); the motion to dismiss filed by Defendant Polaris Detox, LLC d/b/a Innovo ("Innovo"), (ECF No. 40); the motion to seal filed by Innovo, (ECF No. 42); and the motion to seal filed by Plaintiff Hagerstown Recovery, LLC ("Plaintiff"), (ECF No. 52).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to dismiss filed by New Spirit will be granted, the motion to dismiss filed by Innovo will be granted, the motion to seal filed by Innovo will be granted, and the motion to seal filed by Hagerstown will be denied.

**I.　Background**

Plaintiff opened its business under the tradename "The Valley" in April 2021.  (ECF No. 10 ¶ 14).  The Valley is a

residential treatment center in Derwood, Maryland, which treats patients who suffer from drug and alcohol abuse. (*Id.*). Plaintiff holds a trademark for the words "The Valley," which prohibits any other company from using the words "The Valley" in "*CLASS 44: Addiction treatment services; Rehabilitation of drug addicted patients; Rehabilitation patient care services which includes inpatient and outpatient care; Rehabilitation for substance abuse patients.*"  (*Id.* ¶¶ 20-21).[1]  According to Plaintiff, customers find The Valley through "Google Search, paid Google advertisements, Facebook advertisements and printed marketing materials that The Valley posts using its trademark." (*Id.* ¶ 24).

Plaintiff states that Google requires any addiction treatment facility that wants to use Google paid advertisements to go through the LegitScript certification process. (*Id.* ¶ 27).  Plaintiff has a LegitScript certification, which allows it to bid on keywords related to addiction treatment through Google; these ads lead to Plaintiff's website www.thevalleymd.com.  (*Id.* ¶ 30).  Plaintiff "also bids on its own, Trademarked name, The Valley, in Google AdWords, so that when people search just The Valley or The Valley

---

[1] Class 44 is for "Medical, beauty and agricultural" services, pursuant to the United States Patent and Trademark Office.  United States Patent and Trademark Office, Trademark Basics: Goods and Services, https://www.uspto.gov/trademarks/basics/goods-and-services (last visited Mar. 16, 2026) [https://perma.cc/X8CC-Q9NF].

MD, The Valley's paid Google advertisement will also come up."
(*Id.* ¶ 31).

Defendant New Spirit is a residential treatment center in Los Angeles, California. (*Id.* ¶¶ 33-34). Defendant Innovo is a residential treatment center in York County, Pennsylvania. (*Id.* ¶¶ 33, 35).

The complaint alleges that, in 2024, Defendants Jessica Phelan and Treatment Outreach Services Inc. ("Treatment Outreach"), which is wholly owned by Ms. Phelan, set up two websites: treatmentpages.com and treatmentadvisors.info. (*Id.* ¶ 39, 40). Neither is LegitScript certified. (*Id.*). Both websites market to people recovering from addiction, advertise on Google, and lead to a landing page that does not advertise any treatment center specifically. (*Id.* at ¶¶ 39-42). Plaintiff alleges that:

> Treatmentpages.com and treatmentadvisors.info use keywords directly naming other treatment centers in the body of their advertisements. So, for instance when someone[] who is looking for The Valley specifically, searches for The Valley MD or The Valley DMV on Google,[] an ad for treamentpages.com or treatmentadvisors.info will come up pretending to be The Valley. Both of these websites go further than just using the keywords which a consumer cannot see. They also use the actual trademarked symbol "The Valley" directly in their advertisements on Google with the specific intent to trick the consumer into thinking they are finding the Plaintiff the Valley[.]

(*Id.* ¶ 44).

3

On March 28, 2025, Plaintiff's agents were testing their marketing by "searching for terms like *The Valley Md* and *The Valley DMV*[] in Google search." (*Id*. ¶ 46). While searching, the agents received an ad that said "The Valley MD, the #1 Rated in Maryland" but led to treatmentpages.com. (*Id*.). According to Plaintiff, "[n]ot only was treamentpages.com using the name The Valley directly in the paid keywords on Google[,] treatmentpages.com was using the actual trademark 'The Valley' in the actual advertisement the public saw." (*Id*. ¶ 49). Plaintiff's agent called the phone number listed at treatmentpages.com and spoke with an intake officer, who said "they worked for multiple treatment centers and needed to do an intake assessment first." (*Id*. ¶ 52). Plaintiff's agent provided the intake officer with his insurance information, "which happened to be a very high paying insurance policy[,] and told the intake officer he had a drinking problem." (*Id*. ¶ 53). "The intake officer then told [Plaintiff]'s agent that the intake officer was in Maryland." (*Id*.). After reviewing the insurance information, the intake officer, who "admitted that he worked for New Spirit," recommended that the Plaintiff's agent go to New Spirit in California for treatment. (*Id*. ¶ 54). Plaintiff's agent protested, saying he "lived in Maryland and wanted to go to a Maryland facility." (*Id*. ¶ 55). In response, the intake officer said "all that was available in Maryland was government run

4

facilities and because The Valley's agent had good private insurance, he would be much better off going to a high-end facility like New Spirit." (*Id*. ¶ 56).  Plaintiff's agent told the intake officer he would think about it; the intake officer called Plaintiff multiple times over the next two weeks, trying "to talk him into going to New Spirit." (*Id*. ¶ 57-60).  When Plaintiff's agent said he wanted "something closer to home," the intake officer "insisted all that he had available was a bed at New Spirit in California." (*Id*. ¶ 60).  On April 10, 2025, Plaintiff alleges that "a different representative of treamentpages.com called The Valley's agent and explicitly admitted they worked for New Spirit and followed that call up with a text saying they recommend New Spirit." (*Id*. ¶ 62).

Plaintiff continued searching "The Valley MD" on Google during April and May 2025.  (*Id*. ¶ 64-70).  On six different occasions, "an ad for https://treatmentadvisors.info/ came up with the words 'The Valley MD' displayed directly in the advertisement and said let the team at The Valley MD help." (*Id*.).  On May 1, 2025, another agent of Plaintiff called the toll-free number listed on treatmentadvisors.info, which Plaintiff alleges was "very similar to the toll-free number found on treatmentpages.com." (*Id*. ¶ 71).  He told the intake officer that he was seeking help for alcohol addiction; the intake officer asked follow-up questions

and took the insurance information for the agent.  (*Id*. ¶ 72).
The intake officer referred Plaintiff's agent to Innovo for
treatment.  (*Id*. ¶ 74).  The company followed up repeatedly:

> Between May 3, 2025, and May 9, 2025, numerous
> different people texted [Plaintiff's] agent
> from 1-844-425-1276 purporting, to be from
> https://treatmentadvisors.info/ attempting to
> get [Plaintiff's] agent to attend Innovo.  The
> 1-844-425-1276 phone number is the same exact
> number that representatives from
> treatmentpages.com used to contact
> [Plaintiff's] other agent, on March 28, 2025,
> when they attempted to get that person to
> attend New Spirit.

(*Id*. ¶ 75).  Plaintiff sent a subpoena request to Domains by Proxy
for information on the owners of the two websites.  (*Id*. ¶ 76).
"The owner of https://treatmentadvisors.info/ is a nonexistent
company called Admission Team, but lists [Ms.] Phelan, at her home
address, as the contact. The owner of treatmentpages.com is a
Florida corporation, Treatment Outreach Services Inc., which lists
[Ms.] Phelan, at her home address, as the contact."  (*Id*.).
Plaintiff alleges that both websites are "agents for New Spirit
and Innovo or in the alternative they are all owned by the same
people."  (*Id*. ¶ 77).

Plaintiff filed a complaint on April 17, 2025, (ECF No. 1),
followed by the operative amended complaint on June 4, 2025, (ECF
No. 10).  The amended complaint brings six counts, all against all
four defendants (New Spirit, Innovo, Treatment Outreach, and Ms.

Phelan): federal trademark infringement (Count I), federal unfair competition (Count II), common law trademark and unfair competition (Count III), Maryland common law trademark infringement (Count IV), violation of Md. Code Ann., Com. Law § 13-301 (Count V), and conspiracy to violate 15 U.S.C. § 1125(a) and Md. Code Ann., Com. Law § 13-301(1) and (3) (Count VI). New Spirit filed its motion to dismiss on June 18, 2025. (ECF No. 14). Plaintiff filed an opposition on August 7, 2025, (ECF No. 27), and New Spirit replied on August 21, 2025, (ECF No. 35). Ms. Phelan and Treatment Outreach filed an answer on August 29, 2025. (ECF No. 37). Innovo filed its motion to dismiss on August 29, 2025, (ECF No. 40), as well as an accompanying motion to seal one of the exhibits, (ECF No. 42). Plaintiff filed an opposition to the motion to dismiss on October 6, 2025, (ECF No. 51), but did not oppose the motion to seal. Plaintiff filed its own motion to seal on October 7, 2025. (ECF No. 52). Innovo filed a reply on November 3, 2025. (ECF No. 55).

## II.  Standard of Review

New Spirit and Innovo have moved to dismiss under both Fed.R.Civ.P. 12(b)(2), for lack of personal jurisdiction, and 12(b)(6), for failure to state a claim. The court must first consider the arguments related to personal jurisdiction. *See Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548

7

(4th Cir. 2006) ("[T]he dismissal of a case on an issue relating to the merits of the dispute, such as failure to state a claim, is improper without resolving threshold issues of jurisdiction, including personal jurisdiction.").

Fed.R.Civ.P. 12(b)(2) governs motions to dismiss for lack of personal jurisdiction.  Another court in this district previously described the standard for reviewing a 12(b)(2) motion:

> "[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Id.* "[A] court has broad discretion to determine the procedure that it will follow in resolving a Rule 12(b)(2) motion." *Id.* at 268. "[N]either discovery nor an evidentiary hearing is required in order for the court to resolve a motion under Rule 12(b)(2)." *Jones v. Mut. of Omaha Ins. Co.*, 639 F.Supp.3d 537, 544 (D.Md. 2022).  "When 'the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question.'" *Id.* (quoting *Combs*, 886 F.2d at 676).
>
> "When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a prima facie case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir.

8

> 2019). "This 'prima facie case' analysis resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* "The court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Aerotek Inc. v. Babcock & Wilcox Solar Energy, Inc.*, No. 24-cv-177-JRR, 2024 WL 4792116, at *2 (D.Md. Nov. 14, 2024) (citing *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196–97 (4th Cir. 2018)). In resolving a motion brought pursuant to Rule 12(b)(2), "a court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (citing *Grayson[]*, 816 F.3d [at] 267 []).

*Fidelis Cybersecurity, Inc. v. Partner One Cap., Inc.*, 771 F.Supp.3d 614, 624-25 (D.Md. 2025) (alterations to quotations in original).

## III. Analysis

As will be explained, Plaintiff has failed to make a *prima facie* showing of personal jurisdiction over the two facility defendants. New Spirit and Innovo's motions to dismiss for lack of personal jurisdiction will be granted.

### A.   Law on Personal Jurisdiction

"[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima*

*facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson*, 816 F.3d at 268. "When determining whether a plaintiff has made the requisite *prima facie* showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Id.* The court is not required to hold a hearing or provide jurisdictional discovery to rule on a 12(b)(2) motion. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.").

Finding personal jurisdiction requires considering a series of interlocking questions. Personal jurisdiction can be general or specific. A court with general jurisdiction over a defendant can hear any claim against that defendant; a corporation is generally subject to general jurisdiction in its state of incorporation and where it has its principal place of business. *Bradley v. DentalPlans.com.*, 617 F.Supp.3d 326, 334 (D.Md. 2022). Specific personal jurisdiction can arise when the defendant's contacts with the forum state give rise to the cause of action. "[A] federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." *Carefirst of*

10

*Maryland, Inc.,* 334 F.3d at 396 (citing Fed.R.Civ.P. 4(k)(1)(A)).

The United States Court of Appeals for the Fourth Circuit

previously described the analysis required in a case arising out

of the District of Maryland:

> [F]or a district court to assert personal
> jurisdiction over a nonresident defendant, two
> conditions must be satisfied: (1) the exercise
> of jurisdiction must be authorized under the
> state's long-arm statute; and (2) the exercise
> of jurisdiction must comport with the due
> process requirements of the Fourteenth
> Amendment. *Christian Sci. Bd. of Dirs. of the
> First Church of Christ v. Nolan*, 259 F.3d 209,
> 215 (4th Cir. 2001). With regard to the first
> requirement, we must accept as binding the
> interpretation of Maryland's long-arm statute
> rendered by the Maryland Court of Appeals.
> *See Mylan [Laboratories, Inc. v. Akzo, N.V.*],
> 2 F.3d [56,] 61[ (4th Cir. 1993)].

*Id.* Analysis of both the state long-arm statute and the scope of

federal due process is required:

> The Maryland long-arm statute authorizes the
> exercise of personal jurisdiction to the
> limits permitted by the Due Process Clause of
> the Fourteenth Amendment. *Perdue Foods[ LLC
> v. BRF S.A.]*, 814 F.3d [185,] 188[ (4th Cir.
> 2016)] (citing *Beyond Sys., Inc. v. Realtime
> Gaming Holding Co.*, 388 Md. 1, 22[] (2005)).
> This broad reach does not suggest that
> analysis under the long-arm statute is
> irrelevant; rather, it reflects that, "to the
> extent that a defendant's activities are
> covered by the statutory language, the reach
> of the statute extends to outermost boundaries
> of the due process clause." *Dring v.
> Sullivan*, 423 F.Supp.2d 540, 545 (D.Md. 2006)
> (quotations omitted). Both the Maryland Court
> of Appeals and the Fourth Circuit have held
> that it is not "permissible to simply dispense

11

with analysis under the long-arm statute." *Pandit v. Pandit*, 808 F.App'x 179, 185 (4th Cir. 2020) (unpublished) (quoting *Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141 n.6[] (2006)).  To satisfy the long-arm statute, a plaintiff must specifically identify a statutory provision that authorizes jurisdiction, either in his complaint or in his opposition to a Fed.R.Civ.P. 12(b)(2) motion.  *See Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 704 n.1 (D.Md. 2004); *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F.Supp.2d 649, 653 (D.Md. 2001).

*Orbita Telecom SAC v. Juvare LLC*, 606 F.Supp.3d 240, 247 (D.Md. 2022).  Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, provides:

(b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply goods, food, services, or manufactured products in the State;
(3) Causes tortious injury in the State by an act or omission in the State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
(5) Has an interest in, uses, or possesses real property in the State;
(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time

12

the contract is made, unless the parties otherwise provide in writing.

Plaintiff only cites to § 6-103(b)(3), concerning a party who, directly or by an agent, causes tortious injury in the State by an act or omission in the State. (ECF Nos. 27, at 2; 51, at 4). To satisfy § 6-103(b)(3), "both the injury itself and the act giving rise to the injury must have occurred and originated within Maryland." *Pandit*, 808 F. App'x at 186 (citing *Zinz v. Evans & Mitchell Indus.*, 22 Md.App. 126, 130-31 (Md.Ct.Spec.App. 1974)).

If jurisdiction is found under Maryland's long-arm statute, the court then analyzes whether the exercise of jurisdiction comports with due process. An exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum, such that exercising jurisdiction over the defendant would not "offend traditional notions of fair play and substantial justice." *Carefirst of Maryland, Inc.*, 334 F.3d at 397 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)). Courts in this circuit consider three due process requirements for exercising specific personal jurisdiction:

> (1) the defendant must have "purposefully availed" itself of the privilege of conducting activities in the forum state; (2) the plaintiff's claims must arise out of or relate to those activities directed at the forum state; (3) the exercise of jurisdiction must be "constitutionally reasonable." *UMG*

13

> *Recordings, Inc. v. Kurbanov*, 963 F.3d 344,
> 351–52 (4th Cir. 2020), *cert. denied*, []141 S.
> Ct. 1057[] (2021) (citing *Consulting Eng'rs
> Corp.*[ *v. Geometric Ltd.*], 561 F.3d [273,]
> 278[ (4th Cir. 2009)]).

*Bradley*, 617 F.Supp.3d at 334.  In 2021, the Supreme Court of the United States clarified that the phrase "arise out of or relate to" in the second prong of the test is not only satisfied by a causal relationship between the defendant's interaction with the forum and the cause of action. "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,* 592 U.S. 351, 362 (2021).

Plaintiff has not argued that New Spirit or Innovo should be subject to general jurisdiction in Maryland.  Rather, its personal jurisdiction arguments for both New Spirit and Innovo rest on the idea that treatmentpages.com and treatmentadvisors.info were agents of New Spirit and Innovo.[2]  (ECF No. 10 ¶ 77).  In its responses to both motions to dismiss, Plaintiff asserts that the

---

[2] In its complaint, Plaintiff states "Treatmentpages.com and https://treatmentadvisors.info/ are agents for New Spirit and Innovo or in the alternative they are all owned by the same people."  (ECF No. 10 ¶ 77).  Both Innovo and New Spirit deny that they have any common ownership with either treatmentpages.com or https://treatmentadvisors.info/.  (ECF Nos. 40-1, at 12; 14-1, at 4).  Plaintiff does not rely on this argument in the motion to dismiss briefing.

Defendants "used plaintiff's trademark, in violation of the Lanham Act and analogous Maryland Statutes, through its agents, co-conspirators, Treatment Outreach Inc. and Jessica Phelan, to advertise [defendant's] business in [the] State of Maryland[ to ]Maryland residents." (ECF No. 27 at 2; *see also* ECF No. 51, at 4).

### 1.   Agency and Personal Jurisdiction

An agency relationship as the basis for personal jurisdiction is expressly considered in Maryland's long-arm statute.  *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103(b) (("A court may exercise personal jurisdiction over a person, who directly *or by an agent*. . .") (emphasis added).

Plaintiff's assertions of jurisdiction over New Spirit and Innovo run through Ms. Phelan and Treatment Outreach.  And, while those Defendants have answered the complaint and do not challenge personal jurisdiction (despite listing it as an affirmative defense), the proper analysis of jurisdiction over the facility defendants must begin by assessing the allegations and proof regarding the alleged agents.  Both Ms. Phelan and Treatment Outreach are identified as Florida residents.  (ECF No. 10 ¶¶ 3-4).  There is no allegation that either of them was in Maryland when the allegedly offending actions were taken.  The tortious act of trademark infringement, however, "takes place in either the

place where the infringer commits acts of infringement or in the place where customers are likely to be deceived and confused." *Am. Ass'n of Blood Banks v. Bos. Paternity, LLC*, No. 08-cv-2046-DKC, 2009 WL 2366175, at *7 (D.Md. July 28, 2009) (quoting 6 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 32.38 (4th ed. 2008)).   An allegedly infringing advertisement stated, "The Valley MD, the #1 Rated in Maryland" before redirecting to treatmentpages.com, and the advertisements for treatmentpages.info "came up with the words 'The Valley MD' displayed directly in the advertisement and said let the team at The Valley MD help."   (ECF No. 10 ¶¶ 46, 65).   In an analogous situation, another court in this district found personal jurisdiction over out-of-state defendants appropriate when the defendants sought to infringe on the trademark of a Maryland business to siphon off Maryland customers. *See Cole-Tuve, Inc. v. Am. Mach. Tools Corp.*, 342 F.Supp.2d 362, 368-69 (D.Md. 2004). The court will assume that it has personal jurisdiction over both Ms. Phelan and Treatment Outreach under § (b)(3).

Under that assumption, the key question becomes whether Plaintiff has made a plausible case for an agency relationship between New Spirit and Innovo as principals and Ms. Phelan and Treatment Outreach as agents.   In Maryland,

> [a]n agency relationship "is a legal concept
> which depends upon the existence of required

16

factual elements: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." Restatement (Second) of Agency § 1, cmt. (1958); *see Insurance Company of North America v. Miller*, 362 Md. 361, 373[] (2001); *Green v. H & R Block, Inc.*, 355 Md. 488, 503[] (1999).    Although such a relationship is not necessarily contractual in nature, it is always consensual. *Insurance Co. Of N. Amer.*, 362 Md. at 373, []citing *Lohmuller Bldg. Co. v. Gamble*, 160 Md. 534, 539[] (1931).  The ultimate question is one of intent, of both the principal and the agent. *Id.; Howard Cleaners v. Perman*, 227 Md. 291, 295[] (1961).    We have recognized three factors as having particular relevance to the determination of an agency relationship. These factors are:
(1) The agent's power to alter the legal relations of the principal;
(2) The agent's duty to act primarily for the benefit of the principal; and
(3) The principal's right to control the agent.
*Green*, 355 Md. at 503, [] citing *United Capitol Ins. v. Kapiloff*, 155 F.3d 488, 498 (4th Cir. 1998); *Proctor v. Holden*, 75 Md.App. 1, 20, []*cert. denied sub nom.*, 313 Md. 506[] (1988); *Schear v. Motel Management Corp.*, 61 Md.App. 670, 687[] (1985) (stating the factors derive from sections 12–14 of the Restatement); Restatement (Second) of Agency §§ 12–14 (1958).    The three factors are evaluated within the totality of the circumstances. *Green*, 355 Md. at 506[]. The presence of all three factors is not required for a finding of an agency relationship. *Id.*

*Beyond Sys., Inc.*, 388 Md. at 26–27.

17

Plaintiff also makes the argument that the court has personal jurisdiction over both New Spirit and Innovo based on its conspiracy claim. (ECF Nos. 51, at 6; 27-1, at 12).

> The Maryland Court of Appeals has found that a co-conspirator is an "agent" within the meaning of the statutory text and has accordingly adopted the conspiracy theory of personal jurisdiction. *See Mackey[v. Compass Marketing, Inc.*, 391 Md. 117, 145 (2006)]. "The basic premise of the conspiracy theory of personal jurisdiction is that certain acts of one co-conspirator that are done in furtherance of a conspiracy may be considered to be the acts of another co-conspirator for purposes of determining whether a forum state may exercise personal jurisdiction over the other co-conspirator." *Id*. at [127]. To establish personal jurisdiction under this theory, a plaintiff must make a threshold showing that:
>
> (1) two or more individuals conspire to do something
> (2) that they could reasonably expect to lead to consequences in a particular forum, [then]
> (3) one co-conspirator commits [an] overt act[] in furtherance of the conspiracy, and
> (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state.
>
> *Id*. at [129] (quoting *Cawley v. Bloch*, 544 F.Supp. 133, 135 (D.Md. 1982)).

*Hardwire, LLC v. Ebaugh*, No. 20-cv-0304-JKB, 2021 WL 3809078, at *8-9 (D.Md. Aug. 26, 2021) (alterations to quotation in original).

B.    **Personal Jurisdiction Over New Spirit**

Plaintiff has not made a *prima facie* showing of personal jurisdiction over New Spirit under Maryland's long-arm statute. Plaintiff's argument rests on the assumption that Treatment Outreach and Ms. Phelan were agents of New Spirit. (ECF No. 27-1, at 12) ("[Plaintiff's] allegations that New Spirit's agents interacted with Maryland residents and caused harm to the plaintiff's business in Maryland fall squarely within the [Maryland long-arm statute's] scope.").  But Plaintiff has provided no *facts* to show that any of the three factors of an agency relationship are met.  Plaintiff seems to believe that simply asserting that Treatment Outreach and Ms. Phelan were agents of New Spirit is sufficient. Not so.  While the fact that Treatment Outreach and/or Ms. Phelan tried to steer a Maryland resident to the New Spirit facility in California might suggest *some* relationship among the parties, more is required.  Plaintiff has pled no facts showing that Treatment Outreach or Ms. Phelan had any power to alter New Spirit's legal relations, that Treatment Outreach or Ms. Phelan had a duty to act primarily for the benefit of New Spirit, or that New Spirit had any control over Treatment Outreach or Ms. Phelan.  Just calling the websites "New Spirit's agents" is not enough. *Cf. Bradley*, 617 F.Supp.3d at 342 (finding a *prima facie* showing of agency sufficient to find personal

19

jurisdiction where the plaintiff provided contractual provisions and "detailed allegations" regarding how the principal controlled the agent); *Jones*, 639 F.Supp.3d at 551 (finding a *prima facie* showing of agency where the plaintiff provided "specific allegations," such as the principal "providing instructions regarding the volume of calls and the states in which those calls could be made.").

Plaintiff also seeks to invoke the conspiracy theory of personal jurisdiction to support its agency argument. (ECF No. 27-1, at 6). Plaintiff's arguments remain too thin.

> [A] plaintiff asserting jurisdiction "cannot rely solely on conclusory averments, but must adduce evidence of specific facts." [*Mobilization Funding II, LLC v. Jessup Constr., LLC*, No. 24-CV-03592-RMG,] 2024 WL 4769774, at *2 [(D.S.C. Nov. 13, 2024), *aff'd sub nom. Mobilization Funding, LLC v. Stokes*, 163 F.4th 55 (4th Cir. 2025)] (citation omitted). And to establish jurisdiction under the conspiracy theory, those specific allegations must add up to more than a "logical possibility" of a conspiracy; if the facts alleged "could equally describe arms-length transactions" between the purported co-conspirators, then the party asserting jurisdiction has not met its burden. *Unspam*[ *Techs., Inc. v. Chernuk*]*,* 716 F.3d [322,] 330[ (4th Cir. 2013)].

*Mobilization Funding, LLC v. Stokes*, 163 F.4th 55, 63 (4th Cir. 2025). Plaintiff provides no facts to support its claim that New Spirit had an agreement with the other three defendants to violate Plaintiff's trademark. The facts alleged – that a third party was

seeking to refer possible patients to New Spirit - could equally describe an arms-length transaction. *See Unspam*, 716 F.3d at 329-30 (declining to find personal jurisdiction under the conspiracy theory where plaintiffs only "posit how the [defendants] might be involved."). "Accepting [Plaintiff's] allegations as the basis for conspiracy theory personal jurisdiction over [New Spirit] would allow courts to exercise jurisdiction over virtually *any* party alleged to be part of a conspiracy with [a party subject to personal jurisdiction] — a sweeping result which could allow plaintiffs to artfully plead around the 'minimum contacts' required under the Fourteenth Amendment." *Hardwire, LLC*, 2021 WL 3809078, at *10.

In its opposition to New Spirit's motion to dismiss, Plaintiff offers additional facts about New Spirit's own supposed activities in Maryland. (*See* ECF No. 27-2) (alleging New Spirit has directed Google ad traffic into Maryland). As this information has no relation to Treatment Outreach or Ms. Phelan, Plaintiff seems to be seeking to make an argument under Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1), which allows for personal jurisdiction over parties that transact business in Maryland. This argument is unavailing, however, because Plaintiff has only relied on § 6-103(b)(3) in its briefing. *Orbita*, 606 F.Supp.3d at 247 ("To satisfy the long-arm statute, a plaintiff must specifically

21

identify a statutory provision that authorizes jurisdiction, either in his complaint or in his opposition to a Fed.R.Civ.P. 12(b)(2) motion."). Even if the court could consider this additional information under § 6-103(b)(1), the argument would be futile. Exercising specific personal jurisdiction on this basis would not comport with due process because, as Plaintiff admits, its claims do not "arise out of or relate to" New Spirit's Google advertising. (*See* ECF No. 27-1, at 17) ("New Spirit is not being sued for using keywords in its advertisements that the public could not see.").

Plaintiff has failed to make a *prima facie* case of personal jurisdiction over New Spirit. Its claims against New Spirit will be dismissed.

### C. Personal Jurisdiction Over Innovo

Innovo, unlike New Spirit, does have an admitted relationship with Treatment Outreach and Ms. Phelan. (ECF No. 40-1, at 6). At the relevant time, Innovo and Treatment Outreach were in an independent contractor agreement ("Agreement").[3] (*Id*.). While the groups did have a contractual relationship, a contractual relationship does not automatically give rise to an agency relationship. *See Huntington Mortg. Co. v. Mortg. Power Fin.*

---

[3] Ms. Phelan signed the Agreement on behalf of Treatment Outreach. (ECF No. 41-1, at 7).

*Servs., Inc.*, 90 F.Supp.2d 670, 674 (D.Md. 2000), *aff'd sub nom. Huntington Mortg. Co. v. Sherman*, 3 F.App'x 126 (4th Cir. 2001). In fact, the language of the Agreement both expressly disclaims an agency relationship, (ECF No. 40-1, at 6), and includes provisions at odds with such a relationship, (*Id*.).  According to the Agreement, Treatment Outreach had "no authority or responsibility to enter into any contracts on behalf of Innovo[] or otherwise bind Innovo," and Innovo did not have control over how Treatment Outreach did its work.  (*Id*.).  While a contract disclaiming an agency relationship is not dispositive, *see Bradley*, 617 F.Supp.3d at 343, Plaintiff has not provided any facts that show Innovo actually had an agency relationship with Treatment Outreach. According to the Agreement, Treatment Outreach had no right to alter the legal standing of Innovo.  Treatment Outreach did not act principally for the benefit of Innovo, as the complaint shows that Treatment Outreach provided Plaintiff's agent with information about both Innovo and New Spirit.  Finally, the Agreement shows that Innovo did not direct Treatment Outreach in how to perform its marketing. Innovo "did not exercise any control over the 'means, methods, techniques, sequences, procedures and the coordination of' any of Treatment Outreach's marketing efforts."  (ECF No. 40-1, at 7).  Plaintiff's bare assertion that

the websites were agents of Innovo, backed up by no facts, cannot overcome this information.

Plaintiff makes an additional agency argument, saying that Treatment Outreach had apparent authority because "they indicated to at least one prospective patient that they had the authority and ability to conduct intake and directly admit the patient into Innovo's program." (ECF No. 51-1, at 21). Under the apparent agency theory, "a principal is bound by the acts of another where the words or actions *of the principal* cause the third party to believe the principal consents to or has authorized the conduct of the agent." *Nat'l Mortg. Warehouse, LLC v. Bankers First Mortg. Co.*, 190 F.Supp.2d 774, 780 (D.Md. 2002) (emphasis added). As discussed, Plaintiff provides no facts about the acts of Innovo, which Plaintiff attests would be the principal in this apparent agency relationship. Plaintiff cannot make an argument for apparent authority by pointing only to the actions of the alleged agent.

Plaintiff also seeks to apply the conspiracy theory of jurisdiction to Innovo, (ECF No. 51-1, at 11), but it is again unavailing. As described above, Plaintiff must specifically allege facts that "add up to more than a 'logical possibility' of a conspiracy." *Mobilization Funding, LLC,* 163 F.4th at 63 (quoting *Unspam*, 716 F.3d at 330). Plaintiff has not pleaded any facts

24

regarding Innovo's actions, and what facts it has pleaded about Treatment Outreach's connection to Innovo could equally describe an arms' length transaction.  The conspiracy theory does not create specific personal jurisdiction over Innovo for this action.

As in its opposition to New Spirit's motion to dismiss, Plaintiff raises additional facts about Innovo unrelated to agency as if it seeks to assert personal jurisdiction under a different provision of Maryland's long-arm statute.  First, Plaintiff includes nearly 100 pages of marketing emails that Plaintiff's agent has received from Innovo. (*See* ECF No. 51-1, at 10).  Second, Plaintiff alleges that Innovo used to be owned by a Maryland company,[4] Plaintiff received emails from Innovo during that time, and Plaintiff and Innovo have previously referred patients to each other.  (ECF No. 51-2, at 1-2).  None of these facts relate to Treatment Outreach or Ms. Phelan.  Plaintiff only argued that the tortious actions of Innovo's alleged agents, Treatment Outreach and Ms. Phelan, should give rise to jurisdiction under Maryland's long-arm statute.  They cannot now seek to show that Innovo

---

[4] According to Innovo, "[o]n October 26, 2024, Defendant Polaris Detox LLC purchased a treatment facility known as Innovo Detox.  Prior to this purchase, the treatment facility known as Innovo Detox was owned by Maryland Addiction Recovery Center, also known as 'MARC.'"  (ECF No. 55, at 19) (citation omitted).  It is undisputed that the actions at issue in this lawsuit occurred after Defendant Polaris Detox LLC, d/b/a Innovo, purchased the Innovo facility, (ECF No. 10 ¶¶ 46-75), and that Defendant is based in Pennsylvania, (*Id.* ¶ 35).

transacts business in the state as contemplated under §6-103(b)(1). Additionally, exercising specific personal jurisdiction on this basis would not comport with due process because Plaintiff's claims do not "arise out of or relate to" its prior interactions with Innovo. Plaintiff's claims only stem from the actions of Treatment Outreach. (*See* ECF No. 51, at 2) ("At this stage, the key question for the Court is whether it is plausible that Phelan, Treatment Outreach, and Innovo conspired to infringe the plaintiff's trademark, and whether Phelan or Treatment Outreach acted as Innovo's agent during the marketing relationship.").

Plaintiff has failed to make a *prima facie* case of personal jurisdiction over Innovo. Its claims against Innovo will be dismissed.

### D.   Motions to Seal

"It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). The Public Citizen court further explained that:

> When presented with a motion to seal, the law in this Circuit requires a judicial officer to comply with the following procedural requirements: (1) provide public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) if it determines that full

26

> access is not necessary, it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives.

*Id.* at 272 (citing *In re Knight Pub. Co.*, 743 F.2d 231, 234–35 (4th Cir. 1984)); *see also Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000). Local Rule 105.11 requires the party seeking sealing to provide "(a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection."

Innovo moved to seal the Agreement with Treatment Outreach that it attached to its motion to dismiss. (ECF No. 42). In support, it argues that the exhibit "contains confidential proprietary business information, including pricing, length, processes, and negotiated terms that would be competitively harmful to [Innovo] if disclosed publicly." (*Id.* at 1). Innovo also notes that "redacting such commercially sensitive terms would be impracticable and result in a largely illegible document." (*Id.*). No party opposed the motion. Courts have permitted appropriate sealings to protect "business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Innovo seeks only to seal the exhibit itself, and not the briefing where it relies on the relevant portions of the Agreement. Because the full Agreement is

27

not essential to the court's findings and the public will remain able to understand the relevant contents of the Agreement through the briefing, the court will grant the motion to seal.

Following Innovo's motion to seal, Plaintiff filed a motion to seal its response in opposition to Innovo's motion to dismiss, (ECF No. 51), as well as the accompanying memorandum, (ECF No. 51-1). (ECF No. 52). No party opposed the motion. In Plaintiff's own words, the response and supporting memorandum "minimally referenced" the exhibit Innovo has requested to seal. (*Id*. at 1). Curiously, Plaintiff notes it "disagrees with [Innovo's] assessment,"[5] (*Id*.), but filed the motion in the interest of complying with Innovo's request. Plaintiff has not explained why "less drastic alternatives to closure" are not viable here, especially considering it only "minimally referenced" the exhibit. The court will order that Plaintiff file a redacted version of the opposition papers instead, as fully sealing the briefing because of the "minimally referenced" sealed document is not a proportionate response. Plaintiff will have fourteen days to file these redacted versions.

---

[5] As mentioned above, Plaintiff did not file an opposition to Innovo's motion to seal.

28

## IV.  Conclusion

For the foregoing reasons, New Spirit's motion to dismiss will be granted, Innovo's motion to dismiss will be granted, Innovo's motion to seal will be granted, and Plaintiff's motion to seal will be denied.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
